Nash, J.
 

 The equity of purchasing William Howard bargained for, and intended to buy, a fee simple in the land, and was induced by the fraudulent representations of the said Witherspoon to accept a deed, which did not convey such an interest, under the belief, that it did convey it, and that it was sufficient for that purpose. The bill charges, that the price paid for the
 
 *131
 
 land was the full value of the fee simple, and the answers do not deny it. It is indeed admitted by the defendant, John Witherspoon, that the land, when allotted to his wife, was valued at $2,700, but he denies that was its full value, but does not state what it was worth.
 

 No person was present when the bargain was made. We are left therefore to draw our opinion from the deed itself, and the after declarations of the parties, and the facts admitted. Upon its face, the deed conveys to William Howard nothing but an estate for his life, with a general warranty from J. Witherspoon and his heirs of title to him and his heirs for ever. The price given was the full value of the fee simple of the land, and the defendants admit, that it was the intention of the grantor to convey to Howard a title for the life of John Witherspoon, or for his own life and that of Howard. It is further admitted, that William Howard was a very intemperate man, aud that, at the time the deed of conveyance was executed, he had been drinking. The plaintiff does not pretend that William Howard was, at the time of making the contract, drunk to that extreme point, as would, of itself, invalidate the Act, but that he was so drunk as to render him an easy prey to the fraudulent designs of the defendant, John Witherspoon, and if, while in that situation, an unfair advantage has been taken of him to procure from him an unreasonable bargain, a Court of Equity will interfere and rescind the contract, not on the ground of his drunkenness, but of the fraud.
 
 Cook
 
 v.
 
 Clagworth, 18 Vez.
 
 Jr. 12.
 
 Say
 
 v.
 
 Barwick,
 
 1 Ves. and Be. 195.
 
 Story's Eq.
 
 1 vol. 236, s. 231. The witnesses, on both sides, agree as to the intemperate habits of William Howard, but differ as to its effect upon his ability to manage and transact his business, or make contracts. Some of those on the part of the plaintiff state, that he was rarely sober, and when drinking appeared to have no mind; those examined for the defendants never saw him so drunk as to disqualify him. There are three, witnesses
 
 *132
 
 the conveyance ; only one has been examined, and he the plaintiff — David E. Bowers. ITe states that Howard, “ for some time before his death, had become very intemperate, from excessive drink,” and, “ that he had frequently seen him when intoxicated — that his mind appeared to be entirely void of reason,” and, “ that he was intoxicated at the time the deed was executed.” On his cross-examination, he was asked by the defendant, “ If, the time the deed was executed, Howard’s mind was not in a situation to know yery well what he was doing ?” The answer is, “He appeared to be in a situation in which he
 
 might
 
 do business — not so bad as he had some times seen him, and not so good, &c.” It is then established, that he was, at the time the contract was executed, in a state of intoxication. Was an unfair advantage taken of his situation, to obtain from him an unreasonable bargain? We think the evidence fully establishes such to have been the fact. If the contract was such as the defendant alleges, then it is unreasonable upon its face. No witness valued the fee simple at more than $4,000, and all but one at prices ranging from three thousand to that sum, and yet, we are told, that Howard agreed to give for the life estate of John Witherspoon, the large sum of $4,000, the full value of the fee. As a reason, however, why he should be willing so to do, it is alleged, that there was a feud between him and the plaintiff’s family and that he at different times, declared they should not enjoy any of Sis property; that he had so fixed it, they should not. It is strange, if such was his determination, it had not occurred to him, that a will would have been more efficacious. It would have executed his purpose, and left him in the full and free enjoyment of his property during his life. Instead of so doing, it is alleged that while in the enjoyment of his mental faculties, and with a full knowledge of what he is doing, he accepts a deed, which not only deprives the plaintiff and her family of the en
 
 *133
 
 joyment of his property after his death, but actually makes his own enjoyment of it dependant upon the life of Witherspoon. The land excepted, Mr. Bowers tells us, he was not worth $150, and the witnesses for the defendant testify, that he was a young man, and as likely to live a long time as any one. Now, it is certainly true, that Howard had the legal right to dispose of his property as it is alleged he did, but the unreasonableness of such a disposition is, in our opinion, strong, evidence, either that he was imposed on, or that he did not understand the nature of the conveyance he accepted. But farther to show, that Howard was not imposed on, the defendant alleges, that the deed was distinctly and deliberately read over to him before it was executed, and he expressed himself, and that to different persons, that he was satisfied, and that he had got such a deed as he had bargained for. Mr. Bowers is asked, if the deed was read to, or by Howard ; he states he does not know ; he is then asked what kind of a title he understood was to be conveyed j he answers, he does not recollect to have heard any thing said by the parties at the time, as to the title, but he understood, it was to be a full, good, and absolute title. At the time the conveyance was executed, there were four persons present, beside -the parties to the instrument, to-wit, William H. Dula, the brother-in-law of the defendant, and the three attesting witnesses, of whom Mr. Barnes was one, and the son of the defendant another, Mr. Barnes alone is examined», and no reason is assigned, why the testimony of the others has not been brought before us. If they could have sustained the allegation of the answer of John Wither-spoon upon this point, we have little doubt, it would have been done. The allegation, then, that the deed was read over Howard, and that he understood it, is not sustained. But it is proved,.that, to different persons he did state, that he was satisfied, and that he had got such a deed as he had bargained for. Did he get such a conveyance, as
 
 *134
 
 according to the answer of John Witherspoon, he had bargained for
 
 1
 
 Certainly not; he was then either mistaken or had been imposed on: he did not get the estate he had contracted for, but one, which, though of a higher, was of a different, character, and which in the event turned out to be worth little or nothing. Did he understand the deed as written ? We cannot believe he did. Howard lived but about two months after the conveyance was executed, and, after it was so executed, he offered to sell the land to Daniel Horton, and, a short time before his death, he consulted James Brown, another witness, as to arranging his worldly affairs, as he said he was sick, and thought he would die ; and after the payment of his debts, he intended to give the land to the son of Polly Simmons. He had no land to give, but that now in question, and if he had known the nature of the deed he had gotten, he must have known, he had nothing in it to devise; that his interest expired with his life. His meaning, then, when he declared he was satisfied with the deed, that ho had gotten what he had bargained for, was, not that he had purchased nothing but his life estate, but that-he had got a deed from ‘John Wither-spoon, with general warranty, and that would make his title good. He relied upon the warranty, either as conveying the fee, or as binding the grantor to make it, and such belief was produced on his mind by the fraudulent representations of the defendant Witherspoon. We are confirmed in the opinion, that William Howard believed he was purchasing the fee in the land, and that he had done so, from the additional facts, that John offered the land to Thomas Isbell, one of the subscribing witnesses, at
 
 the
 
 price of $3500, the full value of the fee simple, and that, after the sale, he advised Catlett Jones to purchase it from William Howard, telling him it would suit him, and upon neither of these occasions did he speak of a life estate. Whether, however, the conveyance was drawn so as to convey but a life in
 
 *135
 
 terest to Howard, by mistake or fraud, is not material to the relief of the plaintiff, for in either case, the Court will correct the instrument. We are perfectly satisfied it was so drawn either by fraud or mistake. So far from Howard understanding it, Witherspoon himself, according to his answer, did not. He says in one part of it, that he sold only his own estate, namely for his own life, and in another part that the contract was for a conveyance of the land for the lives of himself and William Howard, while the deed conveys but an estate for the life of Howard. It is admitted, therefore, that there was an error or mistake, to some extent at least, and the defendant says he is willing the plaintiff shall enjoy the estate, while he lives, and that he has not disturbed her. But where a mistake is thus clearly established, upon the parties own admission, we are the more at liberty to give weight to other circumstances, as to the extent of it. Upon that point, the value of the estate, the understanding of the only subscribing witness as to' that bargained for, the purpose of the purchaser to dispose of the land, as if he had the fee, the omission of the defendant to produce evidence that the treaty was for a life estate ouly, or that the deed was read by Howard or to him, when he was in a condition to understand it, and when it appears really not understood, by any of the persons present, all satisfy us that the conduct -was for a sale and purchase in fee, or at least that Witherspoon was to convey in fee, with general warrnty. And we must so declare, and that the deed was otherwise drawn, either by fraud or mistake. The plaintiff, therefore, is entitled to the relief she seeks.
 

 Per Curiam.
 

 Decree accordingly.