SAMUEL P. SALTER *et al.*, plaintiffs in error, *vs.* JAMES M. SMITH, governor, defendant in error.

1. Where a prisoner is in the common jail charged with a bailable offense, and the sheriff of the county take bail and discharge him from prison, though the bond be executed on Sunday, it is valid, and if the defendant does not appear at court, the bail is bound. The case is within the exception of section 4579 of our Code, it being a work of charity or necessity.
2. If it be apparent from the record that the forfeiture of the bond has been very irregular—doubtful whether the execution on it was not issued at the first term before it was finally forfeited; if the names of the securities were not called on its forfeiture; if counsel for the security asked if it was his client's case, and the judge responded it was not, there being an issuable plea filed by the security; if the sheriff witnessed all this, and if in addition thereto a motion to set aside the judgment of forfeiture was pending in

court—a rule against the sheriff to pay the money on such execution *instanter* ought not to be made absolute. The facts relieve the sheriff from contempt in not executing such process.

Bail. Bond. Sabbath. Sheriff. Contempt. Before L. P. D. WARREN, Esq., judge *pro hac vice.* Dougherty Superior Court. April Term, 1875.

Reported in the opinion.

D. H. POPE, for plaintiff in error.

B. B. BOWER, solicitor-general, for defendant.

JACKSON, Judge.

Jesse Peterson was indicted for larceny and imprisoned to answer the charge. Salter came into Albany on *Sunday* and bailed him out of jail, standing his security on a bond for his appearance, taken by the sheriff. Peterson failed to appear at court, and a *scire facias* was sued out. Salter defended on the ground that the bond was executed on Sunday, putting in a defense in writing to that effect. When the case against Peterson was called on the trial criminal docket, Salter's counsel asked if that was the case on which he was security; the sheriff and the judge both replied in the negative; the name of the security was not called, but the judgment of forfeiture was entered by the solicitor general. The next morning a motion was made by the counsel of Salter to set aside this judgment. In the meantime a *fi. fa.* had been issued on the forfeited bond and placed in the sheriff's hands, and we suppose that the motion to set aside the judgment had been continued, as a rule was pending against the sheriff for not having made the money on the *fi. fa.* The bill of exceptions and the record are both silent as to the term when the *scire facias* issued, and when the final judgment of forfeiture was made, as well as the time when the *fi. fa.* was issued and placed in the sheriff's hands. It was agreed, however, that the motion to set aside the judgment of forfeiture and the rule against the sheriff

should be both heard together. The court refused to set aside the judgment, and sustained the rule against the sheriff, making it absolute, and, two errors are assigned here for our review : first, that the court should have set aside the judgment, and secondly, that he should have discharged the rule.

1. The judgment of forfeiture appears to have been entered irregularly, to say the least. The name of the security' was not called. Salter's counsel asked if it was the case on which he was security, and both the judge and the sheriff said it was not. But of what avail will it be to Salter to set it aside to enable him to put in his defense, if the defense be not good ; so that it seems the practical question is this : Is the bond void because it was executed on Sunday ? And that is the question argued by counsel before us, and upon which it was admitted that this branch of the case turns. Our statute punishes all persons who pursue " their business or work of their ordinary calling on the Lord's day, works of necessity or charity only excepted :" Code, section 4579.

We think that this statute should be rigidly enforced. Independently of the moral obligation resting upon all men to obey the law of the Lord, and to observe, by abstaining from all secular business, the day set apart for His worship throughout christendom, the rest of one day in seven from all physical and mental labor, is a great conservative, refreshing, invigorating means designed by Almighty wisdom for the preservation of health and the recreation of our mental and bodily faculties. But neither the law of God nor the law of man forbids us to do good on the Sabbath day. The Saviour rebuked the Pharisees who questioned His divinity, because He healed the impotent man on the Sabbath, and bade him take up his bed and walk; and He who spake as never man spake, said that the Sabbath was made for man, not man for the Sabbath, and that it was lawful to do good on the Sabbath day; and His own pure and perfect life illustrated His teaching by deeds of constant kindness and beneficence on the Sabbath day. When the statute of Georgia, therefore, excepts works of benevolence and charity from the operation of this penal statute, it

but re-enacts the law of the Almighty as announced by the Saviour and beautified by His example. The question, therefore, is, was this act of Salter's a benevolent and charitable act? To visit those who are sick and in prison; to speak a word of kindness and sympathy to them; to relieve their distress as far as we may, in accordance with law, is evidence of the highest type of religion and of the sweetest spirit of charity. Such deeds have immortalized the name of Howard and made it almost a synonym for this greatest of christian virtues. If such deeds as these be charitable, surely to open the prison door to one imprisoned by standing his security and risking. money on his good faith, is, *a fortiori*, an act of charity. Therefore, even if Salter were in the habit of thus acting the part of the good Samaritan in spirit, if this were his business, his ordinary calling, the act would be within the exception of the statute, and the obligation would be binding because it was an act of charity. The person bailed was a person of color—poor, therefore, we suppose, and destitute of influential friends, and the act of going his security is the more charitable on this account. It is possible that Mr. Salter wanted the labor of this man, and that a worldly motive was mixed with that spirit of benevolence to which we have attributed his act; but the record discloses no such motive, and it would be not only illegal but shameful in us to go out of the record to rob Mr. Salter of the credit of this deed, as one of pure benevolence, and therefore lawful on Sunday. His character for beneficence ought, in the absence of proof to the contrary, to be sustained, even though it be at the expense of his purse. This court has made no decision bearing directly on this point, but some of our sister states have had the question before them in the construction of similar statutes to ours, and have decided in accordance with the conclusion to which the foregoing reasoning leads: See 3 Bush, 14; 33 Maine, 539; 31 Illinois, 469. We hold, then, that this bond is good, for two reasons: first, because it was not an act in the ordinary business of Salter, and it can scarcely be said to be one in the or-

Salter *et al. vs.* Smith.

dinary line of the sheriff's duties; and secondly, because it was an act of charity.

2. But was the rule against the sheriff properly made absolute? That turns on this question, was the sheriff in contempt of the court? If he had the process of the court in his hands to execute, and failed to do so, he was in contempt, unless some facts appear to show that he did not fail by neglect of his duty, and thereby in contempt, but was misled and deceived by the circumstances surrounding him. It is matter of some doubt whether this execution did not issue upon the *scire facias* at the first term, and before the final forfeiture of this recognizance. The record is silent, and contains no *scire facias*, nor does the bill of exceptions show that any was issued, or when the execution issued. If the statute was not followed, the process would hardly justify a harsh rule for contempt against the sheriff. However that may be, it is quite certain from the record that the sheriff witnessed all the circumstances attending this remarkable forfeiture of this bond. That no securities names were called; that the question was asked, was this the case in which Salter was security, that the judge responded that it was not; that he, himself, thought it was not; that Salter had a defense filed to the *scire facias*, if there was one, at any rate, to the proceeding to forfeit the bond; that a motion had been made to set aside the forfeiture and open the judgment. The sheriff was cognizant of all these circumstances, and while we do not think he has a right to judge whether process placed in his hands be properly grounded on lawful proceedings, yet we think the irregularities here apparent and admitted, and of which he was cognizant, are sufficient to show that he acted *bona fide*, and not in contempt of the mandate of the court. The entire record is so confused, this judgment of foreclosure appears so irregular, and the facts so well calculated to make an officer, however vigilant and faithful, doubtful of his duty, that we feel constrained to reverse the judgment of the court below, and order a new hearing of the case.

Judgment reversed.