WELDON *et al. vs.* COLQUITT, governor.

62 449
103 446
62 449
f108 107
62 449
114 153

1. In a time of peace, and when the magistrates of the country are not overwhelmed with police business, to an extent rendering it impracticable to dispatch the same without encroaching upon the Sabbath, a court of inquiry cannot be begun and held on Sunday for the examination and commitment of offenders, not even of Sabbath-breakers, rioters, or disturbers of public worship. Warrants may issue and arrests be made, but examination and trial cannot be commenced until Monday.

2. It is lawful to take a bond on Sunday, admitting a prisoner to bail, the same being in favor of liberty, and in the nature of a work of charity to a human being in distress.

3. Though a void judgment be some part of the inducement to a contract, yet, if the contract would be valid and obligatory had no judgment been rendered, the contract is not made void by the nullity of the judgment. Thus, where a prisoner in the custody of an officer under a warrant, insisted upon being tried on the Sabbath day, and was tried by the magistrate accordingly, and was ordered to give bail or stand committed to jail, though the order was void, the bond was good as a voluntary obligation, inasmuch as the prisoner had a right to dissolve the arrest by giving bail (the offense being bailable) without the compulsion of any order or judgment whatsoever. To insist on a hearing upon Sunday, and to obtain it and then give bail, is to waive a legal hearing; and waiver is permitted by the Code, sections 10 and 4743.

4. Voluntary intoxication short of deprivation of reason, unless the opposite party has contributed to produce it, will not disable a person to waive a right or to bind himself by a contract, in the absence of fraud or imposition. Moreover, any disability of the principal in a bond or recognizance which is known to the bail, will not prevent the bail from being bound by their undertaking, they being instrumental in causing him to be discharged from arrest, and delivered into their friendly custody.

5. An error of the court in refusing a non-suit is cured, if either party, in the course of the trial, supplies the deficient evidence.

Criminal law. Contracts. Sabbath. Bonds. Bail. Non-suit. Practice in the Superior Court. Commitment. Waiver. Before Judge POTTLE. Hart Superior Court. September Term, 1878.

Reported in the opinion.

F. B. HODGES; SAMUEL LUMPKIN, for plaintiffs in error.

SEABORN REESE, solictor general, for defendant.

BLECKLEY, Justice.

On Sunday, the 21st of October, 1877, during divine service at a country church in Hart county, four men, residents of South Carolina, behaved in a violent, boisterous and disorderly manner, disturbing the congregation, and causing it to break up and disperse. In the midst of the disorder, a constable, who happened to be present, arrested them. One of them escaped. The constable conducted the other three before a justice of the peace, procured a warrant, and then detained them under the warrant, entering their arrest thereon. They were intoxicated, were without counsel, and could not procure any, but insisted upon being tried at once. The trial was commenced late in the afternoon, and was concluded after dark. It took place at the residence of the justice of the peace, which was about half a mile from the church, and some nine miles from Hartwell, the county town. The state was represented by an attorney at law, and the prisoners had the assistance of a non-professional friend. Twenty-three witnesses were examined, ten for the prosecution, and thirteen for the defense. The costs of the proceeding, as registered on the warrant, amounted to $37.80. At the close of the investigation, the presiding magistrate passed and signed officially an order in the following terms: "After hearing the testimony of the parties, on both sides, it is

held by the court that there is probable cause of the guilt of the within cha r e against the prisoners; and it is ordered by the court that the defendants give bond and security in terms of the law, or be committed to the jail of said county, this 21st day of October, 1877." One of the prisoners, Taylor, gave bond accordingly, in the penal sum of eighty dollars, for his appearance at the superior court to answer for the offense, with Weldon and Boleman as bail. The bond was delivered on the day of the arrest and trial, about nine or ten o'clock at night. It bore the same date as the order of commitment, and recited that order, as well as the arrest. Afterwards, in the superior court, a bill of indictment was preferred and found against Taylor for the offense, under section 4574 of the Code; and on his failure to appear, a judgment *nisi* forfeiting the bond was rendered. A *scire facias* issued, and was served upon the bail only, a return of *non est* being made as to the principal. The bail pleaded to the *scire facias*, first, that the bond was illegal and void because made and delivered on the Sabbath day; and, secondly, that both the judgment of the magistrate requiring the bond and the bond itself were illegal and void, because there was no necessity or other good reason for holding the court of inquiry on the Sabbath day, and the holding of the same was not a work of necessity or charity, but was an exercise of the ordinary business or calling of the magistrate.

At the trial a verdict for the amount of the bond was had against the bail, and they moved for a new trial, the overruling of which motion is the subject of the present writ of error. Several grounds were contained in the motion for a new trial, but they nearly all had relation to the alleged invalidity of the bond as a contract made on Sunday, under the circumstances above narrated; which circumstances, with some amplification of the particulars, appeared in evidence. The question is, was the bond valid or invalid?

1. In Georgia, as in England, Sunday is a holy day. The

Code denominates it the Lord's day, and as the Lord's day all courts and magistrates are to consider it. This they are to do as matter of mere law, irrespective of religious obligation and duty. On it there can be performed no judicial labor which does not come fairly within the description of works of necessity or charity. Sunday is no day for trial and judgment, being, by the common law, *dies non juridicus.* The mere act of receiving a verdict on Sunday, whi h the jury are ready to deliver, is illegal. 49 *Ga.*, 436. The current of decision by this court has been pro-sabbatic in full measure, and with that current runs, we think, the true law, as well as the general moral sentiment of the people of the state. Courts, high or low, are no less bound to abstain from ordinary labor on the Sabbath day, than are private individuals. In a time of peace, and when the magistrates of the country are not overwhelmed with police business, to an extent rendering it impracticable to dispatch the same without encroaching upon the Sabbath, a court of inquiry cannot be begun and held on Sunday for the examination and commitment of offenders, not even of Sabbath-breakers, rioters, or disturbers of public worship. Warrants may issue and arrests be made, but examination and trial cannot be commenced until Monday. In the record before us there is no trace of any necessity, physical or moral, which made it incumbent upon the magistrate to disregard the legal restraints appertaining to the Sabbath, and engage in the exercise of judicial functions on that day. Doubtless, he supposed himself to be in the line of duty, but he was mistaken. All he did judicially in the premises was absolutely void; and in strict law, he was himself amenable to the penalties of section 4579 of the Code, as a violator of the Sabbath day, the holding of courts of inquiry being a part of his ordinary calling as a judicial officer.

2. The warrant and arrest were, however, legal. Taylor was in lawful custody, and was as effectually a prisoner and deprived of his liberty as if he had been in jail. Had he been in jail he might have been legally delivered on bail, though it was Sunday. 55 *Ga.*, 244.

. It is lawful to take a bond on Sunday, admitting a prisoner to bail, the same being in favor of liberty, and in the nature of a work of charity to a human being in distress. The place or the mode of his confinement, so that he be in actual legal custody, is not essential. See 31 Ill., 469.

3. The mere fact that the bond was taken on Sunday did not vitiate it. The bond recites, however, the void order of commitment passed by the magistrate, and the evidence, fairly construed, shows that the decision embodied in that order was in fact an inducement to the giving of the bond. The bond was made and delivered, not only because of the warrant and arrest, but because the judgment of the magistrate required it as a condition of keeping out of jail. That judgment was certainly valid or invalid. If valid, it would go to uphold the bond; and if it was invalid, (as we have pronounced it) it had no binding force, and compliance with it was wholly voluntary on the part of the prisoner. He accepted and complied with it when he was under no obligation to do so. Thereby he recovered his liberty, and that was the main end in view, and was, of itself, a sufficient consideration for his contract. If the giving of the bond had left him in *statu quo*, that is, still in custody, and its only effect had been to keep him out of jail, the bond would have been equally void with the magistrate's order; but, as may be fairly inferred from the evidence, he not only kept out of jail, but was freed from the imprisonment in which he was held by the officer under the warrant. Doubtless, he was restored immediately to full liberty. Though a void judgment be some part of the inducement to a contract, yet, if the contract would be valid and obligatory had no judgment been rendered, the contract is not made void by the nullity of the judgment. Thus, where a prisoner in the custody of an officer under a warrant, insisted upon being tried on the Sabbath day, and was tried by the magistrate accordingly, and was ordered to give bail or stand committed to jail, though the order was void, the bond was good as a voluntary obligation, inasmuch as the prisoner had a right

to dissolve the arrest by giving bail (the offense being bailable) without the compulsion of any order or judgment whatsoever. To insist on a hearing upon Sunday, and to obtain it and then give bail, is to waive a legal hearing; and waiver is permitted by the Code, sections 10 and 4743.

4. According to the decided weight of the evidence the intoxication of the prisoner was but partial, and did not reach to the degree of depriving him of reason. He was responsible, civilly as well as criminally, for his voluntary conduct. He was competent to waive his right to be legally tried by the magistrate, and to enter into a binding contract for his appearance at the superior court. It is not pretended that the state or any of its officers had any agency in producing his drunkenness. Code, §2737. His condition, whatever it was, was known to his bail when they united with him in executing the bond. Had his intoxication been such as to disable him to contract, they, as his sureties, being aware of his disability, would have been bound. Code, §2149. The contract was as beneficial to him as it would have been if he had been sober. By entering into it, the bail procured his discharge from imprisonment, and established a friendly custody of him in themselves. He is not urging the invalidity of the bond, and they cannot urge it for any disability on his part of which they had knowledge. If he was so drunk as to unfit him for managing his defense discreetly, the magistrate should, on that account, have postponed the hearing. But it does not appear that he was incapacitated for the business in hand. Neither he nor his friends applied for any delay or indulgence because of his intoxication, or for any other reason. On the contrary, it was by his express desire, and that of his associates, that the investigation took place immediately. In view of the general principles of the law, together with the two sections of the Code last cited, it may be laid down, on this part of the case, as follows: Voluntary intoxication short of deprivation of reason, unless the opposite party has contributed to

produce it, will not disable a person to waive a right or to bind himself by a contract, in the absence of fraud or imposition. Moreover, any disability of the principal in a bond or recognizance which is known to the bail, will not prevent the bail from being bound by their undertaking, they being instrumental in causing him to be discharged from arrest, and delivered into their friendly custody.

5. One ground of the motion for a new trial involves a point of practice which has been several times decided. An error of the court in refusing a non-suit is cured, if either party, in the course of the trial, supplies the deficient evidence.

Cited by counsel for the bail, 4 N. H., 153; 13 Mass., 324; 12 *Ga.*, 93, 380; 31 *Ib.*, 607, 625, 638; 49 *Ib.*, 436; 55 *Ib.*, 244; Story's Contracts, 646, 617; 3 Chit. Genl. Prac., 95; 41 *Ga.*, 452; 59 *Ib.*, 683; 46 *Ib.*, 80; Code, §§4579, 4574. By counsel for the state, Cobb's Dig., 853; 55 *Ga.*, 244; 31 Ill., 469.

Judgment affirmed.