CAMPBELL v. MERCER et al.

108  103
126  475

1. When a non-resident of the county in which an equitable petition is filed against her and others who are residents of that county voluntarily appears and files an answer which not only denies material allegations of the plaintiffs' petition, but also prays for affirmative equitable relief against the petitioner and some of her codefendants, and consents to an amendment to the petition which prays for a money judgment against her, a motion thereafter made to dismiss the action, on the ground that the court was without jurisdiction because such defendant was a non-resident of the county in which the petition was brought, comes too late, and there is no error in overruling the same.

2. When a written instrument, duly executed, guarantees the payment of a sum of money as offered by another for the arrest, with evidence to convict, of the person or persons who shot and killed another named person, such an instrument is, in effect, an offer of a reward of the sum named with the conditions annexed. Where under such an offer one to whom it is made arrests the person who committed the homicide, and furnishes the evidence which secures his conviction, the offer by such acceptance becomes a binding promise to pay, for which the performance of the services affords a sufficient consideration.

3. The verdict was warranted by the evidence, and was not contrary to law.

Argued May 5, 6, — Decided July 20, 1899.

Equitable petition. Before Judge Hart. Jasper superior court. March term, 1898.

R. M. Higgins, J. C. Key, and J. W. Preston Sr., for plaintiff in error. Foster & Butler, J. D. Kilpatrick, and Green F. Johnson, contra.

LITTLE, J. Mercer brought an equitable petition in the superior. court. of Jasper county, against Hill, administrator of W. C. Campbell, and Braxton and Carden Goolsby, of Jasper county, and Sarah Campbell of Putnam county, making the following case: One W. C. Campbell was assassinated and murdered in Jasper county, in July, 1896. After the homicide, the Governor offered a reward of one hundred and fifty dollars for the arrest with evidence sufficient to convict the perpetrators. J. M. Campbell, who was the executor of the murdered man, offered an additional reward of five hundred dollars, to be paid out of the estate of the deceased, for the arrest with sufficient evidence to convict the perpetrators. Petitioner and B. and C. Goolsby jointly undertook to detect and bring to justice the assassins of W. C. Campbell. Petitioner also procured

from the defendant Sarah Campbell, who was the sole legatee
of the murdered man, an instrument in writing as follows:

"Georgia, Jasper county.    July 29th, 1896.    I hereby guar-
antee the payment of the five hundred dollars reward as of-
fered by J. M. Campbell in the Jasper County News of July,
23rd, 1896, for the arrest with evidence to convict the person or
persons who shot and killed W. C. Campbell, of said State and
county, on the afternoon of July 1st, 1896.        her

                                        Sarah x Campbell.
"Signed in presence of                          mark.
    W. H. Henderson.    L. A. Mercer, N. P. & Ex Off. J. P."·

Sarah Campbell delivered said paper to the petitioner, who
retained it in his possession.    Campbell resigned as executor,
and Hill was appointed administrator de bonis non of the es-
tate of W. C. Campbell.    Petitioner and B. and C. Goolsby
caused J. M. Campbell to be arrested for the murder, and prose-
cuted him.    At the September term, 1896, of Jasper superior
court, Campbell was tried and convicted of the murder of
W. C. Campbell.    Petitioner furnished the evidence which
caused a conviction.    Petitioner and B. and C. Goolsby worked
together in causing the arrest of Campbell and securing the
evidence which convicted him.    Campbell is now undergoing
sentence of the court for the homicide.    B. and C. Goolsby have
collected of the Governor the one hundred and fifty dollars re-
ward and appropriated it to their own use, and deny that pe-
titioner has any interest in it.    They have also procured from
Sarah Campbell an order on the administrator of W. C. Camp-
bell, directing him to pay them the amount of the reward.    He
prays that B. and C. Goolsby interplead with him and account
to him for his share of the reward paid by the Governor; that
Hill be restrained from paying the reward to Goolsby.    Subse-
quently, by an amendment, plaintiff alleged that Sarah Camp-
bell had instructed the administrator not to pay her order of
five hundred dollars, and she refuses to pay the same.    Peti-
tioner prayed a judgment in favor of himself and the said B.
and C. Goolsby against Sarah Campbell, for the sum of five
hundred dollars with interest.

B. and C. Goolsby answered, admitting the allegations in

the petition in reference to the offering of the reward, the collection in part by them, the procuring of the order from Sarah Campbell, its revocation, and the refusal of the administrator to pay the amount; but specifically denied that the petitioner acted in concert with them in securing the arrest and conviction of Campbell, and alleged that they themselves secured such arrest and furnished the evidence upon which the conviction was had. Sarah Campbell also answered and admitted the offering of the reward by the executor, but denied his authority to bind the estate by such offer. She admitted that she was the sole legatee under the will of Campbell; and averred that petitioner procured from her the written guaranty set out, by fraud, misrepresentation, and concealment of the fact that at the time Mercer procured the written guaranty he was preparing to have her only remaining son, brother of the deceased, arrested for the crime; that she was induced to sign the same on the representation of the petitioner that it was his purpose to have another person arrested for the commission of that crime; and that immediately after the arrest of her son she revoked the guaranty. She admitted the trial and conviction of J. M. Campbell, and that petitioner and B. and C. Goolsby worked together in the prosecution. She averred that B. and C. Goolsby procured the order from her on the administrator by misrepresentation, fraud, and intimidation; that it was not her free act; that it was without consideration; that she was neither legally nor morally liable. By way of cross-petition she prayed that Hill, the administrator, be perpetually enjoined from paying the order which B. and C. Goolsby wrongfully and fraudulently procured from her, and that such order be delivered up and canceled by decree of the court; and for general relief. The administrator answered, admitting such facts as he knew, and for lack of sufficient information making no answer to the other allegations, and averring himself to be a stakeholder. He attached copy of the order to pay the reward, two letters from Sarah Campbell revoking the same, and prayed the direction of the court. The trial resulted in a verdict for the petitioner against Hill, the administrator, and Sarah Campbell, and adjusting the amount of the different

rewards between petitioner and B. and C. Goolsby; and a decree was rendered accordingly. A motion for a new trial was made on several grounds, and overruled.

1. Complaint is made in the motion, that the court refused to dismiss the case as to Sarah Campbell, because the movant was a resident of Putnam county at the time of the suit; that no legal judgment could be rendered against her, notwithstanding she filed no plea to the jurisdiction of the court and filed an answer to the petition on the merits of the case. We are of the opinion that the court committed no error in overruling the motion on this ground. The defendant Sarah Campbell was served with a copy of the writ and process on the 26th of April, 1897, by the sheriff of Putnam county, and in September, 1897, she filed an answer to the petition, in the nature of a cross-bill, praying for a perpetual injunction against one of the defendants, setting up matter in defense of her liability as claimed in the petition, and specifically praying that the instrument of guaranty made by her should be decreed by the court to be surrendered and canceled, followed by a prayer for general relief. In addition thereto, it appears by the record, that on the 30th day of March, 1898, she consented to an amendment of the petition by which the petitioner prayed for a judgment against her for the sum named in the written instrument of guaranty. Under such circumstances, even if the superior court of Jasper county had no jurisdiction over her under the original petition, it acquired jurisdiction by her appearance and pleading. It is shown by the motion that she filed no plea to the jurisdiction at any time, and that she duly answered the case on its merits. This being true, under the provisions of section 5080 of the Civil Code she admitted jurisdiction of the superior court of Jasper county, and as to jurisdiction she is concluded. *Whittle* v. *Tarver*, 75 *Ga.* 818; *Ray* v. *Home & Foreign Inv. Co.*, 106 *Ga.* 492.

2. The plaintiff in error also complains that the court erred in refusing to dismiss the petition as to her, because it shows that the written guaranty was based on an offer of reward made by James M. Campbell as executor, which was illegal itself, and constituted no charge on the estate of Campbell,

and therefore the guaranty made by her was without any consideration. To this several replies might be made. One is, that it by no means follows from the allegations set out in the petition that the original offer of reward was illegal and not binding. A reward is a recompense or premium offered by the government or an individual for special or extraordinary services to be performed. Black's Law Dictionary. Until acceptance by performance of the services, it is a mere proposition which may be accepted by any part of the public if it be offered to the public, or by any particular person or class of persons if such proposition is made to them. 6 Blatchf. (U. S.) 426; 14 Cal. 134. When accepted by performance of the named conditions it becomes a binding contract, subject to the laws governing contracts generally. We are, of course, not prepared to say that the executor or administrator may bind the estate which he represents by the offer of a reward, because of the law which restricts these trustees from binding the estates which they represent, by contract. It may be, however, that the executor himself would become personally liable on the acceptance of the proposition made by him. How this is we can not say, there being no copy of the offer made by him in the record; nor is it necessary that that point should be here adjudicated. A contract of guaranty is near akin to that of suretyship. It is declared by section 2966 of our Civil Code, that suretyship differs from a guaranty, in that the consideration of the latter is a benefit flowing to the guarantor; and in treating the nature of the obligation of a surety, the same Code, § 2967, declares that if the original contract of the principal was invalid from a disability to contract, and this disability was known to the surety, he is still bound. In the case of *Weldon* v. *Colquitt*, 62 *Ga.* 449, the same principle was expressly recognized by this court. But is the instrument in question legally and technically a contract of guaranty? It is true that it commences with the words "I hereby guarantee the payment," but it also expressly mentions the sum of five hundred dollars as a reward for the arrest with evidence to convict the person or persons who shot and killed Campbell on a given day. It would

seem that the object to be accomplished by this instrument was more than a simple guaranty of the offer of Campbell; and it can not be held that the instrument has no binding force upon the maker.   It is, in effect, an offer of a reward of five hundred dollars for the arrest of, with evidence to convict, the person who murdered her son.   So treating it, was the execution of the paper without consideration to her?   We think not. Any person capable of making a binding contract, whether interested or not, may offer a reward, and will be liable when the terms of the offer are complied with.   21 N. J. L. 310.   The performance of the services constitutes an acceptance of the offer of a reward, and makes a binding contract as between the parties.   Until such performance, the offer is conditional: 7 Metc. 411; 85 Am. Dec. 747; 82 N. Y. 503; 69 Penn. 311; the performance of the service according to the terms of the offer constitutes a sufficient consideration.   35 Ala. 544; 12 Ohio, 281; 73 Am. Dec. 634; 28 Am. Dec. 372.   When Mrs. Campbell executed the instrument there was no contract.   The executor had only proposed a contract.   Hence, if it should be held that the instrument was a contract of guaranty, it could, at the time, guarantee nothing more than the proposition.   To guarantee a proposition is nothing more than to make a proposition.

3. It is further complained that the verdict is contrary to law and without evidence, and should be set aside.   This is an exceedingly unfortunate case for the plaintiff in error.   The fact that she has been held liable for the payment of a reward for the arrest and conviction of one son as the murderer of another son makes the case peculiarly one of hardship.   She avers in her answer that she was imposed upon and made to sign the offer of reward by the fraud and misrepresentation of one of the defendants in error, and there is evidence in the record to support this contention.   On the other hand, there is evidence showing the contrary.   Whether or not this offer was so obtained was a question of fact, and the very painstaking and careful judge who presided at the trial submitted the question to the jury under full and proper instructions, and they have found the fact to be that it was not obtained as she has averred.

If it could be assumed, notwithstanding such finding, that the offer of reward by her was induced by fraud and misrepresentation, the fact nevertheless remains, that after the arrest and prosecution of her son she gave an order to two of the defendants, on the administrator who held her property, for the payment of the reward offered. This was done after a knowledge of the facts and circumstances which she avers constituted the fraud. It is true that she avers that this order for the payment of the money was obtained by fraud, threats, and intimidation, and it may be so; but the jury trying the issues in the case have determined finally her liability; and while the evidence does show that she was a weak, old, and illiterate woman, it does not show that she was incompetent to contract. Had it done so, we have no doubt that the jury in passing on the question of such liability would have given her not only the benefit of such evidence but such sympathy as might legally emanate from a jury-box. It is unpleasant to contemplate the encouragement by a mother of the arrest and conviction of one son for the homicide of another; but so long as laws are made to be executed, the validity of contracts must be enforced and full effect given to the legal consequences of such instruments. The verdict in the case is supported by the evidence, and is not contrary to law. The principles embodied in the written requests to charge, so far as legal, are covered in the general charge; and the judgment of the court below is

<div align="right">

*Affirmed. All the Justices concurring.*