SCANLON *v.* CONNOR.

DEEDS—INTOXICATION AS AFFECTING CONVEYANCE — FRAUD—SETTING ASIDE INSTRUMENTS.

A conveyance of real property worth $1,200 and of personal property worth $1,000, procured by defendant while complainant, the grantor, was in an intoxicated condition brought about by defendant, who paid only $700 for the property, was fraudulent and properly set aside in equity.[1]

Appeal from Muskegon; Sessions, J. Submitted December 13, 1911. (Docket No. 129.) Decided December 29, 1911.

Bill by Mike Scanlon against Charles Connor to set aside a deed of realty and a bill of sale of personalty for fraud. From a decree for complainant, defendant appeals. Affirmed.

*James E. Sullivan* (*Turner & Turner*, of counsel), for appellant.

*Cross, Vanderwerp, Foote & Ross*, for appellee.

[1] Validity of contract made with intoxicated person, see notes in 54 L. R. A. 440; 2 L. R. A. (N. S.) 666; 25 L. R. A. (N. S.) 596.

MOORE, J    The bill of complaint was filled in this case October 22, 1910, to set aside a deed to real estate and a bill of sale of personal property made October 11th of the same year.    From a decree in favor of the complainant, made after a hearing in open court, the defendant has brought the case here by appeal.

The complainant was the husband of Ella Scanlon, who lived at Muskegon, Mich., and died as the result of severe burns.    Her husband, the complainant, was at that time working at Moline, Ill.    Her heirs at law were her husband, two living brothers, one of whom is the defendant, one living sister and the children of two brothers, deceased.    The defendant lives at Muskegon.    The relatives did not notify the complainant of the death of his wife. He learned of that through a letter written him by a friend. It was not until he reached Muskegon that he learned the cause of her death.

It is the claim of complainant that soon after his arrival at Muskegon the defendant and himself began to drink intoxicating liquors, including whisky, furnished by defendant, the defendant drinking much less than complainant; that this continued for two days, when defendant induced complainant to sign the conveyances above referred to for $700.    It is his further claim that the value of his interest in the real estate conveyed by him was in the neighborhood of $1,200, and of the personal property nearly, if not quite, a like amount, more than $1,000 of which was money in the bank.    His further claim is that what was done by defendant was in law and in fact a fraud upon him.    We have already stated that the trial judge who saw the witnesses found the contention of the complainant to be true.

It would profit no one to set out the testimony here.    It establishes clearly that the condition of the complainant was brought about by the defendant; that defendant employed one of his neighbors to help him procure the conveyance of the property; that the neighbor visited a scrivener without the knowledge of the complainant, and pro-

cured the papers to be drawn; that, after the transaction was completed, defendant paid the neighbor $70 for what he had done; that, when complainant was in the condition indicated above, defendant procured from him for $700 conveyances to property worth upwards of $2,000, more than $1,000 of which was money in the bank. In *Miller v. Sterringer*, 66 W. Va. 169 (66 S. E. 228, 25 L. R. A. [N. S.] 596), the court said:

"The decree is fully justified. In some particulars the evidence is conflicting, it is true, but material facts and circumstances glaringly appear and strongly support the decree. These facts and circumstances make the case distinctly one of fraud and imposition. It may not be a case of absolute want of mental capacity to make a deed. Though the intoxication may have been of less degree than total at the time the deed was executed, yet clearly the evidence establishes that it was the means by which the grantor was misled and deceived to his prejudice. Cases like this one do not so much involve questions of incapacity as they involve questions of fraud and undue influence. Where it is shown that only partial intoxication has been made the means of practicing a fraud in obtaining a deed, or securing a fraudulent advantage, wholly against conscience, equity will interpose. * * *

"The greatest of Virginia law commentators concisely states:

"'The plea of drunkenness was formerly regarded with as little favor in civil, as it still is in criminal, cases. For although Lord Coke classes a drunkard as *non compos mentis,* yet he allows him no indulgence on that account. "As for a drunkard," says he, "who is *voluntarius daemon,* he hath (as has been said) no privilege thereby, but what hurt or ill he doth, his drunkenness doth aggravate it." But for more than a century this rigorous doctrine has been much relaxed, and it is agreed that drunkenness invalidates or renders voidable all contracts and transactions where (1) the drunkenness was brought about by the opposite party; (2) a fraudulent advantage was taken of it; (3) it deprived the party of his reason, and of an agreeing mind. * * * The mere fact that one is drunk when he enters into a contract is no ground for setting it aside, at least in equity, unless under one or the other of the circumstances above stated; but when a person's habitual addiction to intoxication renders him extremely subject to imposition, such

habits, though not carried to an excess constituting absolute incapacity, lay a ground for strict examination whether any instrument executed by him does not in itself, or in the attendant circumstances, contain evidence that advantage was taken of those habits.' 2 Minor's Institutes (4th Ed.), 644.

"In the same connection this author further says that, when the drunkenness is brought about by the party obtaining the contract, the act is so flagrant a badge of fraud that it always renders the contract voidable, both at law and in equity; and that, where a fraudulent advantage is taken of the drunkenness, this, too, is so direct a fraud as always to render the transaction voidable in all courts.

"The principle that is particularly applicable to the case under consideration is that equity will relieve one from a contract made by him in drunkenness, though his reason may not have been wholly overthrown, where fraudulent advantage has been taken, or where the drunkenness has been brought about by the other party. It is recognized clearly in 17 Am. & Eng. Enc. Law, p. 402; 14 Cyc. p. 1105; 1 Story, Eq. Jur. 231; 2 Pom. Eq. Jur. 949; 2 Page on Contracts, § 905. Some of the many cases in point are: *Cooke* v. *Clayworth,* 18 Ves. Jr. 12; *Reynolds* v. *Waller,* 1 Wash. (Va.) 164; *Wigglesworth* v. *Steers,* 1 Hen. & M. [Va.] 70, 3 Am. Dec. 602; *Samuel* v. *Marshal,* 3 Leigh [Va.], 567; *White* v. *Cox,* 3 Hayw. (Tenn.) 79; *Hotchkiss* v. *Fortson,* 7 Yerg. [Tenn.] 67; *Crane* v. *Conklin,* 1 N. J. Eq. 346 (22 Am. Dec. 519); *Thackrah* v. *Haas,* 119 U. S. 499 (7 Sup. Ct. 311); *Jones* v. *McGruder,* 87 Va. 360 (12 S. E. 792); *Weldon* v. *Colquitt,* 62 Ga. 449 (35 Am. Rep. 128).

"In applying this principle, the following expressions have been used:

"'If a party has been led into a hard and disadvantageous bargain, while excited by liquor, equity avoids it. And the same rule applies to persons whose minds are enfeebled by habitual intoxication, although not actually intoxicated.' *Birdsong* v. *Birdsong,* 2 Head. [Tenn.] 289.

"'If, when a man is so drunk as to render him an easy prey to the fraudulent designs of another, an unfair advantage is taken of his situation to procure from him an unreasonable bargain, a court of equity will interfere and rescind the contract, not on the ground of his drunkenness, but of the fraud.' *Calloway* v. *Witherspoon,* 40 N. C. 128.

"A Canadian chancellor, in the consideration of a case very similar to the one before us, has said:

"'It is manifest that a man of intemperate habits, a slave to strong drink, when dealing with the tavern keeper at whose house he lives, and from whom he obtains the liquor which he craves, and with which he daily stupefies or maddens himself, is as liable to be overreached, and needs for himself and family or heirs the protection of this court at least as much as a client who deals with his solicitor, or as a patient who has transactions with his medical attendant. No man is more helpless than a drunkard is in the hands of those who obtain his confidence, and to whom he looks day by day for the gratification of the morbid craving which has possessed him; and the modern doctrine of both law and equity is against giving up even a poor drunkard, or a drunkard's property, to be the prey of the rapacious and unprincipled.' *McGregor* v. *Boulton*, 12 Grant, Ch. ( U. C. ) 288."

To permit such a transaction as is disclosed by this record to stand would be a travesty upon justice.

The decree is affirmed, with costs.

OSTRANDER, C. J., and STEERE, BROOKE, and STONE, JJ., concurred.