WALSH *v.* OAKMAN.

1. FRAUDS, STATUTE OF—LAND CONTRACTS—TERMS OF CONTRACT—SUFFICIENCY.

> A contract for the sale of real estate definitely fixing the property, the parties, the price, and the terms of payment complies with the statute of frauds, 3 Comp. Laws, § 9511 (3 Comp. Laws 1915, § 11977).

2. SAME—VENDOR AND PURCHASER—RESERVATIONS.

> The fact that the vendor was to have a certain time in which to take off the crop and that the buildings are "excepted" and would be removed, when necessary, did not constitute a grant of land so as to render the signing of the contract by the purchaser necessary within the statute.

3. VENDOR AND PURCHASER—LAND CONTRACTS—VALIDITY.

> Where land was sold for lot subdivision purposes, and the contract provided that releases on any lots into which the tract might be subdivided would be given on payment of a sum equal to twice the *pro rata* indebtedness, such contract was not void, since the terms of the contract were fixed by such provision.

Cross-appeals from Wayne; Hart, J., presiding. Submitted October 10, 1917. (Docket No. 8.) Decided December 28, 1917.

Bill by James Walsh against Robert Oakman and others to have a land contract declared invalid. Defendant Oakman filed a cross-bill for the specific performance of said contract. From the decree rendered, both parties appeal. Affirmed.

*Henderson & Henderson,* for plaintiff.

*Edmund J. Stafford (Leo M. Butzel,* of counsel), for defendants.

STONE, J. In this case the plaintiff, by his bill of

complaint, seeks to have the following written instrument set aside and declared invalid, and to have his record title of the land affected thereby cleared of the apparent cloud caused by the recording of the instrument, which is as follows: .

"DETROIT, MICH., February 8, 1916.
"For and in consideration of two hundred ($200.00), receipt whereof is hereby confessed and acknowledged, I hereby agree to sell to Robert Oakman the west half of the east half of the west half of quarter section eight. (8) Ten Thousand Acre tract, town 1 south, range 11 east, Wayne county, Michigan, containing twenty (20) acres more or less, for the sum of two thousand ($2,000) dollars per acre, payable as follows: Five thousand ($5,000.00) dollars on delivery of a good and merchantable abstract of title; five thousand ($5,000) dollars, six months thereafter; and the remainder on or before five years—with interest on all sums at any time unpaid at the rate of six per cent. per annum payable semi-annually.

"It is agreed that releases on any lots into which this tract may be subdivided will be given on payment of a sum equal to twice the *pro rata* indebtedness.

"It is understood that until July 15, 1916, shall be allowed to take off the berry crop. It is also agreed that the present buildings on said land are hereby excepted, and will be removed when the subdivision of said land shall make it necessary.

"In witness whereof I have set my hand and seal this 8th day of February, 1916.

             [Signed] "JAMES WALSH.
"Witness: BRUCE H. WARK."

The defendant Oakman by cross-bill claims that this instrument is a valid contract, and asked for specific performance thereof.

After issue joined, the case was heard in the court below upon its merits; the witnesses being examined in open court as in a suit at law. The learned circuit judge filed an opinion containing findings of facts and conclusions of law therein. We cannot more clearly

state the case and the questions involved than to recite the substance of that opinion. It is as follows:

"The plaintiff in this case, James Walsh, on February 28, 1916, filed a bill in this court setting forth that on February 8, 1916, he signed a paper writing, which is now claimed by the defendant Robert Oakman to have been a contract for the sale of 20 acres of land therein mentioned as owned by the plaintiff to said Oakman for the sum of $2,000 per acre.

"Plaintiff further claims that he is an uneducated man; that said land is worth $2,500 an acre and upwards; that the writing does not contain all the terms of the talk and agreement; that it is unconscionable; that he did not understand it when he signed it; that his signature to the same was procured by unfair means and taking advantage of him; and that the paper has been changed since signing.

"Plaintiff further claims that the said paper is merely an offer, which he revoked before it was accepted by said Oakman; that a check was given for the down payment which was not legal tender, and therefore no payment on said land; that said paper does not satisfy the statute of frauds; that said plaintiff was intoxicated when he signed said paper, and thereby incapable of making a valid contract.

"The plaintiff for the above reasons says the said paper writing is null and void, is a cloud upon his title, and asks to have it so declared and the cloud removed.

"On the other hand, the defendants claim that the paper writing, together with its acceptance, is a valid contract, and by a cross-bill ask to have it specifically enforced.

"Findings of Facts.

"The court finds from the evidence the facts to be as follows:

"(1) On February 8, A. D. 1916, plaintiff was the owner of the west one-half of the east one-half of the west one-half of quarter section 8, Ten Thousand Acre tract, town 1 south, range 11 east, containing 20 acres of land, situated in township of Greenfield, Wayne county, Michigan.

"(2) That on the 8th day of February he signed a paper writing, which is known as Exhibit A, to the

bill of complaint, and which is adopted as a part of these findings.

"(3) While the plaintiff is an uneducated man in a way, yet his claim is not maintained by the proofs, that the bargain or contract was an unconscionable one, and that he did not understand the paper when he signed it. The paper has not been changed since it was signed. The signature to the same was not procured by unfair means, or by taking advantage of him. I think the paper contains all the terms talked over, but, if it does not, the oral talk was merged into the written offer.

"(4) The writing contains an offer to sell, which was then and there accepted by said defendant Oakman, through his agent, Mr. Wark, and it thus became a completed contract, which could not be revoked, except by mutual consent. The daughter testifies Mr. Oakman's name was not in the paper when her father signed it. I find it was in, and I find the daughter was mistaken in this regard, though I believe honestly.

"(5) I find the check was given and accepted by the plaintiff on the day in question, and under those circumstances it was a valid payment on said contract and binding.

"(6) The paper writing satisfies the requirements of the statute of frauds, in that it is a sufficient memorandum signed by the vendor.

"(7) The plaintiff was not intoxicated to such an extent at the time he signed the writing, and when it was accepted, that it would vitiate the contract. Plaintiff was able to drive home on the day in question, talked the matter over, named his price, handed the paper to his daughter to read, and signed it in a perfectly legible manner. His daughter says he was intoxicated, but she does not detail facts that convince the court that his actions were such that he could not and did not understand and comprehend what he was doing. She may have honestly thought he was intoxicated, but from the evidence the court would not feel justified in so finding.

"(8) The price to be paid was $40,000, of which $200 has been paid.

"(9) The contract reserved to plaintiff the berry patch for 1916, and also the use of the buildings while

they are on said land, with the right to remove them, when the subdivision makes it necessary.

"(10) Under the language of this contract possession passed to defendant Oakman at the time it was made, subject, however, to the reservations therein contained.

"(11) Plaintiff by this suit has kept possession of said premises from the time the contract was made until now.

"Conclusions of Law.

"(1) Exhibit A is a valid proposal, and by its having been accepted constitutes a valid contract.

"(2) Being a valid contract, plaintiff should perform it according to its terms. While specific performance is not a matter of absolute right, yet when contracts are made they should not be ignored. More thinking perhaps should be done before making a contract, and there is no doubt there would be less trouble in trying to avoid them. Specific performance is decreed of this contract according to its terms.

"(3) Plaintiff, having kept possession of said premises for the year 1916, is held to pay the taxes for that year.

"(4) Costs are allowed to defendants to be taxed, but are to be allowed and taxed as if it was a case with a single defendant."

"(5) The bill of complaint may be, and is hereby, dismissed. A decree may be prepared in accordance with these findings."

While the bill of complaint does not, in terms, claim that the plaintiff was intoxicated, at the time of his signing said instrument, it does allege:

"That the signature of your orator was obtained by said Wark to said paper writing by unfair means and by taking undue advantage of your orator, who was in no condition at the time he signed said paper writing to make a contract for the sale of said land, as said Wark well knew."

The grounds upon which plaintiff largely bases his claim for relief are the following: That under the statute of frauds the writing is invalid as an agree-

ment to convey land; that Wark, who negotiated the deal, had no authority to bind Oakman to perform the contract, and did not do so; that Robert Oakman's name was not written in said instrument at the time plaintiff signed it, and that Oakman was not mentioned as the buyer of the land during the negotiations; that the offer to sell, if otherwise valid, was withdrawn by plaintiff before it was accepted by Mr. Oakman, and before any notice of his acceptance thereof was communicated to plaintiff; that plaintiff was intoxicated when he signed the instrument, and by reason of his condition was incapable of making a valid contract; that Wark, who negotiated the writing, knew the plaintiff's intoxicated condition, and took an unfair and fraudulent advantage of that condition to secure the written offer to sell from plaintiff, which offer was unfair to him both as to price and terms; that the writing thus obtained was voidable at plaintiff's option, and plaintiff, when he recovered his senses, did seasonably repudiate the deal; and that defendants are not entitled on their or any other theory of the facts to a specific performance of the contract.

The defendants' claims are that plaintiff was not intoxicated at the time he signed the instrument; that Oakman's name was written in the instrument at the time plaintiff signed it; that the writing is a contract and was fairly made; that the consideration to be paid was fair and adequate; that the contract is legally valid, and should be specifically enforced in favor of the defendant Robert Oakman.

At the hearing Mr. Oakman's counsel stated that he would waive the provision relating to deferred payments, and elected to pay the entire amount in cash into court for the benefit of the plaintiff.

A decree was entered on February 14, 1917, requiring specific performance of the contract. It ordered the defendants to pay to the plaintiff the sum of $39,-

800, being the entire balance due under the contract; and it is asserted, and not denied, that the money was paid by defendant Oakman for the plaintiff to the clerk of the circuit court for the county of Wayne, and has been in his possession since. The bill of complaint was dismissed, and the relief was granted upon defendants' cross-bill. The plaintiff has appealed to this court from the decree; and, the court having allowed interest, the defendants have also appealed; but in and by their brief their appeal is waived. We shall not refer to it again.

There is no question as to plaintiff's title, as the bill alleges and answer admits that the plaintiff was the owner of the land in question on February 8, 1916. We shall not undertake to quote from the testimony in the case, and shall content ourselves by stating that, having read every word of the testimony in the record, we are strongly of the opinion that the circuit judge was justified in his findings upon the facts. Under the provisions of section 9511, 3 Comp. Laws (section 11977, 3 Comp. Laws 1915), we are of the opinion that the contract, or memorandum thereof, was sufficient to constitute a good and valid contract. In the recent case of *Ogooshevitz* v. *Arnold,* 197 Mich. 203 (163 N. W. 946), it was said that a contract definitely fixing the property, the parties, the price, and the terms of payment complies with the requirements of the statute of frauds. See, also, *Munro* v. *Edwards,* 86 Mich. 91 (48 N. W. 689) ; *Mull* v. *Smith,* 132 Mich. 618 (94 N. W. 183) ; *Miller* v. *Smith,* 140 Mich. 524 (103 N. W. 872) ; *Smith* v. *Mathis,* 174 Mich. 262 (140 N. W. 548) ; *Brin* v. *Michalski,* 188 Mich. 400 (154 N. W. 110).

In *Brin* v. *Michalski, supra,* Justice STEERE, speaking for this court, said:

"It is pointed out by counsel that this is not a contract to convey, * * * and does not contain suffi-

cient definite and certain provisions essential to directing specific performance of a contract of that nature, in the particulars that no mention is made of defeasance, insurance, repairs, payment of taxes, and, most important of all, possession.

"As to the omission pointed out as 'the most important agreement of them all' in a land contract, the law provides that, where such stipulation is omitted, possession remains with the vendor until full performance and receipt of deed by the vendee. *Druse* v. *Wheeler,* 22 Mich. 439; *Gault* v. *Stormont,* 51 Mich. 636 (17 N. W. 214) ; *Way* v. *Root,* 174 Mich. 418 (140 N. W. 577). While the omissions pointed out properly may be and often are guarded by express provisions in contracts for sale of real estate, as the conditions of the property and desire of parties may suggest, they are not essential to the validity or decree for performance of a contract. This agreement contains the essential elements of a contract, and is certain and definite so far as it goes. The parties, property, consideration, terms, and time of performance are clearly stated."

These authorities, we think, answer the criticism of plaintiff's counsel upon the questions there suggested, and especially with reference to possession.

In *Munro* v. *Edwards, supra,* this court said:

"The memorandum agreement contains no provision for possession, but this is such a common incident of the sale of real estate that its omission will not invalidate the agreement. The right to possession follows the payment of the $300 [the amount to be paid as soon as the abstract was completed]."

It was urged by counsel for the plaintiff that the following paragraph vitiated the contract under the statute of frauds, it not having been signed by defendant Oakman:

"It is understood that until July 15, 1916, shall be allowed to take off the berry crop. It is also agreed that the present buildings on said land are hereby excepted, and will be removed when the subdivision of said land shall make it necessary."

It is contended that because Mr. Oakman did not sign the contract that the above provision rendered the contract void; it being a grant from him. It seems to us clearly, under our decisions, that the effect of this provision is that the plaintiff did not undertake to convey or pass to Mr. Oakman the berry crop. It is equally clear that he excepted from his sale the buildings, with the privilege in him to remove them when the subdivision of the land should make it necessary. The words "reserving" and "excepting" are often indiscriminately used, and whether a particular provision is an exception or reservation does not depend upon the use of either term, but upon the nature and effect of the provision itself. It has been said that whatever is excluded from the grant by exception remains in the grantor, as of his former title or right. In a deed of land "excepting the timber thereon" it was held that title to the timber remained in the grantor. *Martin* v. *Cook*, 102 Mich. 267 (60 N. W. 679); *Reynolds* v. *Gaertner*, 117 Mich. 532 (76 N. W. 3); *Negaunee Iron Co.* v. *Iron Cliffs Co.*, 134 Mich. 264, 280 (96 N. W. 468).

Another contention is that the clause, "It is agreed that releases on any lots into which this tract may be subdivided will be given on payment of a sum equal to twice the *pro rata* indebtedness," rendered the contract void. We think that the testimony of the witness Wark as to his understanding of that part of the instrument is the proper interpretation of it:

"My understanding as to the clause agreeing to release any lots into which this tract may be subdivided upon payment of a *pro rata* indebtedness is that, when acreage is divided into a certain number of lots, to arrive at the *pro rata* indebtedness on the lots, you would divide the number of lots into the unpaid balance on principal. That result is multiplied by two. Therefore the fact that the streets were out would have no bearing upon this ratio upon the whole acreage.

\* \* \* He would get the *pro rata* of the whole acreage, so that as a matter of fact, when half the lots were released, the whole property would be paid for."

It is the claim of plaintiff's counsel that *Wardell* v. *Williams,* 62 Mich. 50 (28 N. W. 796, 4 Am. St. Rep. 814), sustains his contention upon this subject. We invoke careful reading of this last-cited case, and, without quoting from it at length, we think it is readily distinguishable from the instant case. There the price of the lots was to be agreed upon, the contract stating, "Said farm having been subdivided into lots we will agree to the valuation of each lot," etc., showing clearly that the valuation of the lots was to be agreed upon in the future. As this court said:

"This being so, there were terms which the parties have never agreed upon, and upon which their minds have never met, so as to make a completed contract, and before it was concluded the defendant withdrew altogether and refused to complete it."

In other words, it there provided for future treaty of the parties; but here the basis of the releases is stated in the contract.

Upon the subject of intoxication it is well that we should bear in mind that there is no evidence here that any claimed intoxicated condition of the plaintiff was brought about by Mr. Wark, or any of the defendants, as was the case in *Scanlon* v. *Connor,* 168 Mich. 133 (133 N. W. 931). The condition of the plaintiff, whatever it was, was a voluntary one in so far as these defendants are concerned. We agree with the court below upon this subject.

Neither do we think that any fraudulent advantage was taken of the plaintiff by Mr. Wark in the transaction, in the light of all the testimony. The price to be paid was a fair one.

And, lastly, as to the authority of Mr. Wark, we can come to no other conclusion, under the testimony,

than that Wark was authorized in advance to make the agreement which was made. What he did was the act of Oakman, his principal. It is of but little importance whether the money that was paid was the money of Wark or of Oakman. The undisputed evidence shows that the check for $200 was a valid check upon a bank where funds were deposited for its payment.

Upon the whole record we are satisfied that the learned circuit judge reached the correct conclusion, and the decree of the circuit court is affirmed, with costs of this court to the defendants.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.