ACME ELECTRICAL ILLUSTRATING & ADVERTISING CO. v. VAN DERBECK.

SUNDAY CONTRACT—RATIFICATION.

* A contract void because executed on Sunday cannot be made valid by ratification.

Error to Wayne; Frazer, J. · Submitted April 18, 1901. Decided July 2, 1901.

*Assumpsit* by the Acme Electrical Illustrating & Advertising Company against George A. Van Derbeck to recover a balance due on a contract to install an electric plant. From a judgment for plaintiff, defendant brings error. Reversed.

On Sunday, June 18, 1899, plaintiff and defendant executed the following written contract:

"This agreement, made this ——, A. D. 1899, by and between the Acme Electrical Illustrating & Advertising Company, of Springfield, Mass., party of the first part, and G. A. Van Derbeck, of Detroit, Mich., manager of Detroit Ball Club and Empire Theater, party of the second part, witnesseth:

"*Whereas*, the party of the first part are owners of the Acme electrical system of illustrating baseball games by electricity;

"*Whereas*, the party of the second part is the manager of Detroit Ball Club and Empire Theater:

---

* Head-note by GRANT, J.

"Now, therefore, be it known that the party of the first part hereby agrees by these presents, for and in consideration of the payment of four hundred and fifty dollars, and the stipulations and agreements hereinafter named, to install in the Empire Theater, at Detroit, a complete system for illustrating baseball games by electricity, upon the following terms and conditions, and no others:

"It is hereby mutually agreed that the party of the first part shall install said system in said Empire Theater without expense to the party of the second part. The party of the second part hereby agrees, for himself and legal representatives, to furnish said Empire Theater, clean and light the same when necessary, furnish the necessary ticket sellers and ticket takers, and all other help necessary, and cause to be inserted daily advertisements of said system in the daily papers of the city of Detroit, of not less than four lines in each paper.

"It is further mutually agreed by the parties hereto that, for and in consideration of the agreements herein stipulated, the said party of the first part shall receive one-half of the net receipts, and the party of the second part shall receive one-half of the net receipts, realized from the sale of admission or reserved-seat tickets to witness the exhibitions of this system, and whatever may be realized from the sale of refreshments, or other privileges. It is mutually understood that, before a division of the receipts shall be made, there shall be a deduction from said receipts of the sum of four hundred and fifty dollars; said sum being amount hereinbefore mentioned. It is further agreed and understood that the sum of forty-five dollars shall be deducted each day to cover operating expenses of the said system in said theater.

"It is further mutually agreed that the party of the second part shall assume and take entire management of the business, making daily statements and weekly settlements unto the party of the first part of their respective share of the profits, said settlements to be through the Home Savings Bank of Detroit, Mich.

"It is further mutually agreed that this agreement shall take effect at once, or as soon as the installation of the system is completed, which must be Saturday, June 24, 1899, and not to continue longer than the baseball season of 1899, with option on other seasons on same basis, or as long as mutually agreeable to both parties hereto.

"The party of the first part hereby agrees, for itself and legal representatives, not to install or exhibit, or permit or license any one else to install or exhibit, the system in any other place of amusement or theater in the city of Detroit during the life of this instrument.

"It is hereby further agreed and understood that the party of the second part is to carry $2,500 insurance to fully indemnify the party of the first part from any losses by fire or otherwise that may occur to its property while in the keeping of the party of the second part, and that he is in no wise to acquire any right, title, or interest in said property.

"It is further mutually understood and agreed that, in the event that the party of the second part shall fail to make returns and statements as herein stipulated, or neglect or fail to carry out the terms and conditions of this instrument, then, and in that·event, the party of the first part shall have the right 'to immediately take possession of their appliances, and remove the same, without notice.

"In witness of the above, we have hereunto set our hands and seals the day and year first above mentioned.

"June 17, 1899.

"ACME ELECTRICAL ILLUSTRATING
& ADVERTISING CO.,
"E. ABBOTT TODD, Sec.
"G. A. VAN DERBECK.
"Witness: W. J. CHITTENDEN, Jr."

The apparatus was put up, and proved a failure; there were no profits to be divided; and plaintiff brought this suit to recover $350, the price of installing the apparatus, as stated in the agreement, $100 having been paid. The suit was brought in justice's court, plaintiff declaring "in an action of *assumpsit* on all the common counts, especially for balance of $350, due plaintiff on installing an electric plant."

Mr. Todd, the secretary of plaintiff, was produced as its witness, and was asked what arrangement or contract he had made with the defendant. The attorney for the defendant objected, as the contract was in writing, when the following colloquy occurred:

"*The Court:* The contract seems to be in writing.

"*Q.* Was it in writing?

"*A.* Under the agreement by which the board was ordered, the contract was not in writing.  A written contract was subsequently made after the board had been shipped.

"*Mr. Collier:* I submit, if it was in writing—

"*The Court:* It all culminated in a written contract. It seems to me,· by the statement of both parties, the contract was in writing.

"*Mr.. Hislop:* I do not think your honor understood me properly.  The board was ordered at $450, and a verbal contract for the furnishing of the board for $450, but the written contract employed a lot of other details.

"*The Court:* I do not think the contract for $450, verbally, was binding.  I think the written contract governs, and the verbal contract for $450 is not binding under our law.  He engaged to pay $450 for the board.

"*Mr. Hislop:* Yes, and he paid $100 on it, and he paid it before the written contract was entered into.

"*The Court:* Not according to your statement.

"*Mr. Hislop:* I say the $100 was paid on the 19th, and the written contract entered into on the 27th.  The company did not accept it until the 27th."

All evidence of the conversation prior to the execution of the written contract was excluded, and the written contract was then admitted, under the objection of the defendant that it was executed upon Sunday.  Mr. Todd then testified that he told defendant "that no contract was binding until signed and countersigned by the president and treasurer of the company."  The residence of the company was in Massachusetts.  After this conversation, the contract was signed in duplicate, one copy delivered to the defendant, and one retained by Todd.  The execution was witnessed by Mr. Chittenden.  Todd forwarded his copy to the company in the East.  When he received it back does not appear.  All that appears is that it was produced upon the trial, and had attached thereto the signatures of the president and treasurer.  No notice was given—or at least there is no evidence that it was—to the defendant that it was signed by the president and treasurer.  The sole evidence of ratification is the testimony of Mr. Todd that defendant afterwards paid $100 on

the contract, and made a verbal promise to pay the balance due.

The court instructed the jury that the written contract was void, being made on Sunday, but charged them that it was perfectly legitimate for defendant to ratify the contract upon some other, secular day, and that any action on the part of the defendant which showed that he approved and recognized it as an existing contract on some secular day did not make the original contract valid, but was the execution of a new contract upon a day upon which the parties were capable of contracting. The jury rendered a verdict for the plaintiff.

*Maybury & Lucking*, for appellant.

*Thomas Hislop*, for appellee.

GRANT, J. (*after stating the facts*). Under this record, the written contract, executed upon Sunday, must control, unless there was an independent contract subsequently executed upon a week day. A Sunday contract cannot be made valid by ratification upon a week day. There must be evidence from which the jury can find an independent contract between the parties aside from the illegal one. *Pillen* v. *Erickson*, 125 Mich. 68 (83 N. W. 1023), and authorities there cited. There was no evidence in this case of any such independent contract. Plaintiff is not seeking to recover upon a *quantum meruit*, but upon a contract. Whether the court erred in excluding testimony of a parol contract before the execution of the written one upon Sunday is not before us. That ruling was in favor of the defendant, and against the contention of the appellee. The declaration is not for the apparatus alone, but for "installing an electric plant." The contract contained many conditions and stipulations other than the purchase of the apparatus. Ordinarily, the rule is that, when parties have reduced their contract to writing, that controls, and prior negotiations are inadmissible. Whether the plaintiff can abandon the written

contract because executed upon Sunday, and rely upon a parol contract previously executed upon a week day, is a question upon which we are not required to express an opinion.    I have made considerable search, and have failed to find a case involving this question.    Neither are we called upon to pass upon the question of the effect of the duplicate contract being signed by the president and treasurer at the home office of the plaintiff, in Massachusetts.    If this contract was not binding, according to the testimony of Mr. Todd, until signed by them, was it binding without notice to defendant that it had been signed by them ?    If plaintiff did not notify defendant that it was signed by them, but carried out the contract as executed by its secretary and defendant, is it not bound by the action of its secretary in executing and delivering the contract on Sunday ?    These are questions not discussed.    We suggest them, as they may arise upon a new trial.

Judgment reversed, and new trial ordered.

The other Justices concurred.