SILVER *v.* SHULMAN.

1. APPEAL AND ERROR—EQUITY—SUPREME COURT HEARS CHANCERY CASES DE NOVO.

The Supreme Court hears chancery cases *de novo*, aided but not controlled by the findings of fact of the trial judge.

2. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—SUNDAY CONTRACT.

On appeal from a decree granting the specific enforcement of a preliminary contract for the sale of an apartment building, where the record is convincing that said contract was signed on Sunday, and therefore void, the decree of the court below will be reversed.

Appeal from Wayne; Mandell (Henry A.), J. Submitted February 1, 1921. (Docket No. 103.) Decided March 30, 1921.

Bill by Louis Silver and another against Benjamin Shulman and another for the specific performance of a land contract. From a decree for plaintiffs, defendants appeal. Reversed, and bill dismissed.

*William F. Connolly* and *Louis H. Wolfe,* for plaintiffs.

*William H. Wetherbee* (*William Henry Gallagher,* of counsel), for defendants.

SHARPE, J. The plaintiffs seek specific performance of a preliminary contract executed by them and the defendants for the purchase and sale of a certain apartment building in the city of Detroit. The writing is dated April 5, 1919. The claim of the defendants is that, while so dated, it was in fact signed on Sunday, April 6th. The trial court found against the defendants. As was said by Mr. Justice FELLOWS in the recent case of *Leser* v. *Smith,* 212 Mich. 558, 561:

"This court hears chancery cases *de novo*, aided but not controlled by the findings of fact of the trial judge."

We have read and re-read this record with much care. While loath to overrule a finding of fact made by the trial court, who saw and heard the witnesses, we are convinced, after considering all the testimony submitted, that the preponderance is with the defendants.

The story of the transaction as testified to by plaintiffs and their witnesses is as follows: Louis Cransburg and Charles Weingartner, real estate agents, having heard that defendants wished to sell their apartment house, went there with a prospective purchaser in the latter part of March, 1919, but no sale was made. On Friday, April 4th, Weingartner and the plaintiff Louis Silver drove about the city, looking at different properties. They stopped in front of defendants' apartment, but did not get out of the car. They made no appointments to meet again. About noon on the following day, Silver went to their office and said "he was willing to take that property." After 7 o'clock that evening, Silver drove around with his car, having with him his wife, his father-in-law and his sister-in-law, and, taking the two real estate agents, they went to the defendants' apartment and about half an hour later the preliminary contract was signed. Up to this time, Silver had never seen the inside of the property and had no knowledge of the rentals being paid therefor. He then saw the apartment in which the defendants lived and was told the rentals received for the other apartments. The price agreed upon was $25,500. Two hundred dollars was then paid, $4,800 to be paid when the deal should be closed, five days after the abstract was completed, and the balance in quarterly payments of $550 each, with interest. The improbability of a man's deciding to

make a purchase of a property worth $25,500 without examining it or ascertaining anything about the rentals received is apparent. It also appears that plaintiff is in the fish business and, conformable to his Jewish faith, had his store closed on Saturday, but was in the habit of opening it for business at 7 o'clock in the evening.

The defendants testified that Silver and the two real estate agents came to their home on Sunday morning, April 6th; that they went through at least some of the other apartments, were informed of the rentals paid and left; that they returned, accompanied by the others, between 1 and 2 o'clock that afternoon, and after some negotiations the preliminary writing was signed. In this they are corroborated by their two sons, boys of 13 and 15 years of age, and by three other witnesses who were occupants of near-by apartments, and to a greater or less extent by four other witnesses.

It will serve no useful purpose to set out the testimony at greater length. There is no way in which the conflict therein can be reconciled or accounted for on the ground of mistake. We can but apply the usual tests of interest of the witnesses, probability of the truth of their stories as told and the inferences to be drawn from usual or unusual conduct. After giving all the testimony due consideration, we feel constrained to hold that the evidence tending to show that the writing was signed on Sunday predominates. It was therefore void, could not be ratified, and cannot be enforced. *Aspell* v. *Hosbein,* 98 Mich. 117; *Acme Electrical, etc., Co.* v. *Van Derbeck,* 127 Mich. 341 (89 Am. St. Rep. 476) ; *Berston* v. *Gilbert,* 180 Mich. 638.

A decree will be here entered dismissing the bill of complaint, with costs to the defendants.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.