GREGOR v. OLDE.

1. SPECIFIC PERFORMANCE—EVIDENCE—SUFFICIENCY.

In a suit for the specific performance of a land contract, evidence *held*, sufficient to show that plaintiff and her husband had paid a considerable sum in excess of the purchase price, and the cost of improvements and taxes paid by defendants, and therefore was entitled to a deed.

2. JUDGMENT—RES ADJUDICATA—BURDEN OF PROOF.

The burden of establishing the defense of *res adjudicata* was upon defendants.

3. SAME—EVIDENCE—SUFFICIENCY.

An unsigned notation on the file of a case before a circuit court commissioner that judgment had been entered, with testimony from the clerk that the commissioner said it was in his handwriting, *held*, insufficient to establish a judgment and sustain the defense of *res adjudicata.*

4. SPECIFIC PERFORMANCE—JUDICIAL DISCRETION — ARBITRARY REFUSAL OF RELIEF.

While the granting of relief by specific performance rests largely in the discretion of the court, that discretion is judicial, and where a proper case is made out by the proofs such relief may not be arbitrarily refused.

5. SAME—LACHES—EQUITABLE ESTOPPEL.

Where plaintiff many times asked for an accounting from defendants, which was not given her, they may not complain of her laches or invoke the doctrine of equitable estoppel because she continued to pay after paying all that she owed them.

Appeal from Wayne; Goff (John H.), J. Submitted January 26, 1922. (Docket No. 108.) Decided March 30, 1922.

Bill by Louisa Gregor against Ernest J. Olde, Jr., and others for the specific performance of a land con-

tract and for an accounting.   From a decree for plaintiff, defendants appeal.   Affirmed.

*Robert M. Dalton* (*Fritz L. Radford*, of counsel), for plaintiff.

*Finkelston & Lovejoy* and *H. C. Chilson*, for defendants.

FELLOWS, C. J.   This case was here on the question of the sufficiency of the bill in *Gregor* v. *Olde*, 209 Mich. 43.   We there reversed a decree granting a motion to dismiss.   Shortly after the decree dismissing the bill was entered in the court below and before the case was submitted to this court, defendant Olde sold the premises on land contract to Israel Prevost and Emma Prevost, husband and wife.   Upon the case being remanded a supplemental bill was filed making them parties.   The case went to a hearing on the merits and the trial judge found the facts to be with plaintiff and entered a decree in accordance with the prayer of the bill.   The details of the decree will be presently referred to.

The testimony in this record strongly preponderates in favor of the plaintiff's claim.   On June 2, 1902, the father of defendant Olde entered into a land contract with plaintiff and her husband, Rudolph Gregor, to sell them the premises in question.   The purchase price was $1,400, the payments were to be $8 every two weeks until the purchase price was paid with 6 per cent. interest.   It is the claim of the plaintiff that during the lifetime of her husband he furnished the money and that after his death she and the children furnished the money to make the payments and that they have been regularly made, and that frequently larger sums than the regular payments were made.   It is her claim that she has paid much more than she should have paid and is, and long ago was, entitled to a deed of the premises.   Defendants, on the other

hand, claim that the payments were not regularly made; they also claim that Mr. Olde, Sr., while he was active and looking after his business, and thereafter defendant Olde who succeeded him in title, always paid the taxes on the premises, paid for improvements, and they claim that there is much more due on the contract than the original purchase price. Elaborate computations made by both counsel are found in the record in which their respective claims as to amounts paid and amounts due are set out at length. These computations have been carefully considered and we have spent considerable time examining the account books which defendants' counsel earnestly insist were competent evidence. The account books are not very helpful and we do not think them controlling in view of the testimony that on many occasions Mr. Olde made a memorandum of the money paid on a strip of paper instead of on the small account books he sometimes carried in his pocket. We need not review these computations or the account books but will proceed as briefly as possible to point out the testimony that is convincing to us that the facts are with the plaintiff. Both parties labored under some disadvantages in presenting their claims to the court. Mr. Olde, Sr., had been stricken with apoplexy and could not give his testimony. However, his son Walter E. Olde, who made the collections from 1906 down to June, 1918, was called as a witness and gave testimony favorable to defendants' contention. Plaintiff's copy of the contract had been stolen after her husband's death, so she could not produce the indorsements made on it and a paper attached to it for that purpose.

Plaintiff's husband died in July, 1912. Several of plaintiff's children, who were then attending school, testify that in April of that year they and their father, who was then ill and about to undergo an operation, added up the sums which had been paid on the contract and indorsed by the Oldes on a paper attached

thereto, and that the amount so paid and so indorsed was over $2,400 and less than $2,500. They do not undertake to give the exact figure. Plaintiff testifies that the computation was made but she does not claim to have participated in it. While this testimony comes from plaintiff and members of her family, we are satisfied they are telling the truth. After Mr. Gregor's death Mr. Olde did not call for payments on the contract until the following September, when plaintiff claims payments were resumed and kept up regularly. When plaintiff's son reached the age of 16 he commenced work at $50 per month, which he says was turned over to his mother and a part of which was paid on the contract. When one of the girls went to work she likewise assisted from her wages in making payments on the contract during 1916, 1917 and 1918. During all this time plaintiff was unsuccessfully trying to get an accounting from defendant Olde.

After Mr. Gregor's death plaintiff was advised to apply for a mother's pension; this she did but the matter seems to have been delayed for several years. Finally Probate Judge Hulbert took the matter up. In order to find out her financial condition he wrote Mr. Olde, Sr., several letters asking him to come in. Doubtless Mr. Olde's condition precluded him from appearing in person or answering the letters. A subpœna was served on him to appear August 3, 1917. His son Walter E., who, as we have stated, had been making the collections on this contract, appeared for him. He claimed there was still due on the contract over $2,000 and he presented some memoranda which were not at all convincing to Judge Hulbert. Judge Hulbert figured that the contract had been fully paid and advised Mrs. Gregor to consult a lawyer. The significant part of Judge Hulbert's testimony given in this case is the following:

"*Q.* Did he tell you at that time that she had paid regularly her payments of $8 every two weeks?

"*A.* Yes, sir, he did.   My recollection is that he said up to 1917.

"*Q.* That she had made her regular payments?

"*A.* Yes, sir."

The high standing of Judge Hulbert and his total disinterestedness in the subject-matter of this litigation precludes us from rejecting his testimony and accepting that of interested parties.   If the plaintiff and her husband had paid but $8 every two weeks from the date of the contract to the date of this proceeding before Judge Hulbert (and there is testimony from both parties that many payments in excess of $8 were made) they had paid at that time over $3,100. But it is insisted that the Oldes had paid large amounts of State, county and city taxes on the property and had paid for improvements on the premises which sums should be added to the purchase price. From the date of the contract to the time the children and Mr. Gregor figured up the amount that had been paid on the contract the total State and county taxes paid amounted to $26.06 and the total city taxes paid to $122.43.   The only improvement put on the house was an annex to the kitchen built about the time the contract was entered into costing $108 and which amount we are satisfied was promptly repaid by Mr. Gregor.   Street opening assessments amounting to $35.05 had also been paid.   At the time of the proceeding before Judge Hulbert, the total amount of State and county taxes paid from the date of the contract amounted to $48.39, and the total city taxes paid amounted to $239.13, and an additional street opening assessment of $100.44 had been paid.   These amounts covered a period of 15 years and do not furnish a justification for the large amounts claimed by defendants. A consideration of the testimony and the figures submitted to us in the numerous tables is convincing to

us that plaintiff and her husband had paid a considerable sum in excess of the purchase price, the improvements, the taxes and interest, and unless precluded by some inflexible rule of law plaintiff was entitled to a deed.

Defendants insist that there are insuperable legal obstacles to plaintiff's right to a decree for specific performance. The main legal defense is that there has been a former adjudication of the rights of the parties under this contract by a judgment of the circuit court commissioner, and they invoke the doctrine announced in *Security Investment Co.* v. *Meister,* 214 Mich. 337, and similar cases. The burden of establishing this defense is upon the defendants. Upon the hearing of the case it appeared that plaintiff's counsel had by stipulation consented to the adjournment so that the question decided when the case was here before is not of importance. The defendants did not produce the docket of Commissioner May or Commissioner Nichols. What they did and all they did so far as the record discloses was to swear Commissioner May's clerk, who produced the files and they were offered and received in evidence. On the file were some notations showing the various adjournments and then the following:

"May 12. Judgment for restitution of premises, amount found due $2,801.88, $1.50 costs."

This was unsigned and the only testimony identifying the handwriting was from this witness:

"Judge Nichols says that is his handwriting, I put it up to him."

Does this unsigned memorandum with only the hearsay testimony as to the identity of the handwriting establish a judgment and sustain the defense of *res adjudicata?* We think not.

Defendants' counsel rely most strongly on *Hickey*

v. *Hinsdale,* 8 Mich. 267 (77 Am. Dec. 450). In that case the justice had not entered the judgment on his docket, but his minutes were as full and complete as his docket was required to be, and they were signed by him. Here the minutes are incomplete and unsigned, and there is no competent evidence to establish the handwriting. The case is in principle much like *Wilber* v. *Goodrich,* 34 Mich. 84. In that case what purported to be a transcript of a justice's judgment had been received in evidence. It was not certified to by the justice who was called as a witness but who did not testify to its authenticity. It was held that the judgment was not proven and the case was reversed on this question alone. In *Henry* v. *Gates,* 118 Mich. 379, it was said:

"A paper purporting to be an execution issued upon such a judgment appears in the record, but such execution is insufficient to show a valid judgment. It is no less hearsay than would be testimony of oral statements of the justice to that effect.

"To prove a justice's judgment, it must be shown that jurisdiction of the defendant was obtained, and that at a proper time a trial was had and a judgment rendered, and its amount. This would be required if the dockets were produced, and certainly proof that the lost docket contained as much is requisite."

The testimony in the instant case falls far short of establishing that a valid judgment was rendered, and the defense of *res adjudicata* must fail.

While it is true, as contended by defendants' counsel, that the relief by specific performance rests largely in the discretion of the court, that discretion is a judicial one, and where by the proofs a proper case for such relief is made out, the court is required to grant it and may not arbitrarily refuse it. There is nothing in this record that would justify withholding it in the instant case. Nor can defendants invoke the

doctrine of equitable estoppel or claim anything for plaintiff's delay in asserting her rights. Defendant Olde and his father continued to receive money from her after she had fully paid all that she owed them and it does not lie with them to now complain of her laches. She many times asked for an accounting which was not given her and defendants are not in position to invoke the doctrine of equitable estoppel.

The decree of the court below will be affirmed. It protected the interest of defendants Prevost. It required defendant Olde to account for the rental value of the premises from the date of plaintiff's eviction to the date of its settlement in the court below. It also allowed plaintiff for certain expenses occasioned by the eviction. Upon the settlement of the decree in this court these items will be brought down to date. Plaintiff will recover costs of this court.

WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.