ELBOM *v.* PAVSNER.

1. VENDOR AND PURCHASER—FORFEITURE—EXTENSION OF TIME—EVIDENCE—SUFFICIENCY.

In a suit by the vendees in a land contract to enjoin its forfeiture and for specific performance, testimony *held*, sufficient to establish that an extension of time with appointment of time and place to close the deal was twice agreed upon, and that plaintiffs met at the appointed times and places, but that defendants defaulted therein.

On validity of sale partially made on Sunday and perfected on secular day, see note in 4 L. R. A. (N. S.) 1151.

The question of the effect of the statute of frauds upon the power of equity to reform a contract is discussed in note in L. R. A. 1917A, 571.

2. SAME — SUNDAY CONTRACT — NEW CONTRACT VALID NOTWITH-
STANDING ORIGINAL MADE ON SUNDAY.

Where the parties to a void Sunday contract for the sale
of an apartment house, met on the following Monday,
talked over the terms of the contract and came to an
agreement which was put in writing and signed the
following day, it was valid notwithstanding the vendors
were allowed to retain as consideration therefor the con-
sideration previously paid on the void contract.

3. FRAUDS, STATUTE OF—LAND CONTRACT—SUFFICIENCY.

In a suit by the vendees in a land contract to enjoin
its forfeiture, and for specific performance, defendants'
contention that it is invalid because the rate of interest,
form of conveyance, security and vendors' equity are not
stipulated, and the real party in interest as plaintiff
is a third party, held, not tenable.

4. SAME—VENDOR AND PURCHASER—LAND CONTRACT—SUFFICIENCY.

A contract for the sale of an apartment house which
definitely describes the property, gives the names of the
contracting parties and states the price with terms of
payment, satisfies the statute of frauds.

5. VENDOR AND PURCHASER—AGREEMENT BY VENDEES TO RESELL
IMMATERIAL.

That plaintiffs had made a qualified agreement to sell the
property long after this suit was commenced, conditioned
on their prevailing in this litigation, held, immaterial.

6. EVIDENCE—EQUITY—SPECIFIC PERFORMANCE — ADMISSIBILITY OF
PAROL EVIDENCE.

In equitable proceedings where fraud or mistake in a
contract are such as to admit the equitable remedy of
reformation, parol evidence is admissible under a bill for
specific performance.

7. SAME—INTERPRETATION OF CONTRACT—PAROL EVIDENCE ADMIS-
SIBLE.

Where the language of a land contract was not clear on
the question of possession, but contained language from
which it was possible to infer right of possession in plain-
tiffs, parol testimony was admissible to aid in the in-
terpretation of the contract.

8. VENDOR AND PURCHASER — LAND CONTRACT—TIME NOT OF ES-
SENCE UNLESS SO PROVIDED.

Where no language in a land contract expressly makes

time of the essence of the contract, the bare naming of time for performance or when payments are to be made does not necessarily make time of the essence of the contract in a court of chancery.

9. SAME—DEFAULT—FORFEITURES NOT FAVORED IN EQUITY—DEFAULTING PARTY HELD TO EXPRESS AGREEMENT.

Although strict forfeitures without previous notice and last chance to perform are not favored in equity, where the parties have by direct language in their contract made time of the essence thereof, courts of equity will hold the defaulting party to his express agreement and enforce the stipulated forfeiture.

Appeal from Wayne; Richter (Theodore J.), J. Submitted June 12, 1923.   (Docket No. 88.)   Decided December 19, 1923.

Bill by Sam Elbom and another against Albert Pavsner and others to enjoin the forfeiture of a land contract, for specific performance, and for an accounting.   From a decree for plaintiffs, defendants appeal. Affirmed.

*Maxwell S. Friedland,* for plaintiffs.

*N. Calvin Bigelow,* for defendants.

STEERE, J.   Defendants owned, under a land contract muniment, a 10-family apartment building and grounds located on Hendrie avenue in the city of Detroit, and resided in two of the apartments.   They listed this property for sale with an agent named Barnett who, on Sunday, July 27, 1919, took plaintiffs there as prospective purchasers.   During the interview which followed between the parties a sale and purchase were agreed upon.   A memorandum of this agreement was then drawn up by a neighboring druggist named Small who was a notary public, and signed by the parties which, omitting introductory matters containing a description of the property and acknowledgment of a deposit, is as follows:

"The parties of the second part are to give to the parties of the first part (besides the two hundred dollars deposit) five thousand eight hundred dollars within ten days from the date the abstract is brought up to date.    The full purchase price being thirty-five thousand ($35,000.00) dollars.    The balance of twenty-nine thousand dollars are to be paid in instalment payments of seven hundred dollars every three months.    The seven hundred dollars payments include the interest.

"The parties of the first part are to have received their equity in said building within five years and three months from the date the sale is made.

"The parties of the first part are at privilege to stay at the premises they are at present occupying for a period of six months from the date the deal is closed at a rental price charged to the rest of the tenants in the same building for rooms equal to theirs."

This first memorandum of agreement prepared by Small was dated July 26, 1919, but it is undisputed that it was in fact signed by the parties on Sunday, July 27, 1919, and the $200 deposited was then paid defendants.    It soon came to the attention of plaintiffs that this agreement made and signed on Sunday might be invalid, and on Monday an interview with defendants resulted in another agreement being prepared by Mr. Small on the following Tuesday, July 29, 1919, containing the same terms as the first, which the contracting parties then signed, defendants retaining the $200 already paid.

It is also claimed by plaintiffs that in connection with their discussion of the matter of rent and privilege of defendants to retain possession of the apartments they then occupied for six months after closing the deal, as stated in the written agreement, it was expressly understood and agreed that plaintiffs were to have possession of the property and collect the rents after payment of the $5,800 specified in the contract,

which the conveyancer failed to as clearly express in the written agreement as he should have done.

On August 31, 1919, defendants delivered to plaintiffs an abstract of title which the latter submitted to their attorney and received from him a favorable opinion thereon within a week or ten days. The testimony shows that plaintiffs had available resources, were able and willing to make the next payment of $5,800 in time and manner provided by their agreement, if required, plaintiff Schwartzberg then having $3,000 in bank with which to pay his half of that amount. He also had further money coming to him from sale of some property, its payment only awaiting settlement pending preparation of an abstract, but he had arranged to bring his family over from the old country and, as a precaution, communicated those facts to defendant Pavsner, requesting him to grant two or three months' extension of time in which to pay $900 of his share of the $5,800, to which, as Schwartzberg testified, Pavsner replied that the deal was not then ready to be closed and "we will see about it later."

Plaintiffs' testimony further shows that while matters were in that condition their attorney endeavored to communicate with defendants by telephone without success, and on September 18th wrote them by registered mail that plaintiffs were ready and had been ready to close said deal and were prepared to pay them the $5,800 as provided, suggesting Monday, September 22d, at 2 o'clock, at his office, as a convenient time and place, with the request that, if not convenient, they communicate with him or his clients and an appointment mutually satisfactory could be arranged. This letter was received by defendants on September 19th.

On September 20th plaintiffs received a letter, dated September 18th, from defendants' attorney written at defendants' request notifying them that the agree-

ment of purchase dated July 26, 1919, had been declared forfeited "because of failure to perform the same according to the terms thereof," and giving notice that defendants would retain the deposit of $200 to apply on account of damages, and would proceed to sell the property for the best available price, holding plaintiffs responsible for all damages which they might sustain. On receipt of this letter plaintiffs and Barnett visited defendants, on September 21st, and it was finally arranged that defendants would grant Schwartzberg three months' additional time in which to make the payment of $900 in consideration of his paying them a bonus of $50. An appointment was then made between the parties to meet in the office of defendants' attorney at 2 o'clock in the afternoon of Monday, September 22d, and close the deal.

Plaintiffs and Barnett went to defendants' attorney's office at the appointed time, prepared to close the deal according to arrangement made the evening before. They waited there until 5 o'clock and none of the defendants having appeared they went to Pavsner's store and inquired why defendants had not kept their appointment, to which he replied they wanted all the money and would not agree to any extension of time of payment of the $900, to which plaintiffs replied that they would have the full amount ready for them the next day, September 23d, at defendants' attorney's office at 2 o'clock in the afternoon, and an agreement was then made for the parties to meet at that time and place to close the deal. Plaintiffs and Barnett met this appointment ready and able to close the deal, having with them sufficient certified checks and other bank paper for that purpose. These were shown to defendants' counsel, and they waited in his office until 5 o'clock, but defendants did not appear. They then went to Pavsner's store and told him they had met their appointment ready to fulfill, showed him the bank paper they had

with them for that purpose and asked why defendants had failed to keep the appointment. His reply was that defendants had changed their minds entirely in regard to the deal, refused to close. it, and said they were offered more money for the property, but did not claim or say they were too late.

These matters are denied by Pavsner, who was defendants' spokesman in the negotiations and principal witness. He testified that shortly after September 10th he told Elbom they were ready to close the deal, to which the latter replied that the abstract was all right and they would close it in a day or two. He did not see either of plaintiffs again until September 20th and made no concessions or agreement to extend the time after giving notice of forfeiture; that Schwartzberg never told him he was bringing his family from the old country or said anything to him about $900 before September 22d, and they never showed or offered him any money or checks, but when they asked him why he did not come down and close the deal he told them it was too late. Asked on cross-examination when he first made up his mind not to go through with the deal, he replied:

"I didn't make up my mind not to go through with the deal.

"*Q.* Are you willing to go through with the deal now? You were willing at all times to go through with the deal, weren't you?

"*A.* No, not all times.

"*Q.* When did you change your mind and make up your mind not to go through with the deal?

"*A.* After the service of the notice.

"*Q.* That Sunday, that is when you made up your mind not to go through with the deal?  *  *  *

"*A.* Because they did not have the money.

"*Q.* You say they did not have the money?

"*A.* Yes, that is what they said.

"*Q.* Did they tell you on Sunday that they had the money?

"*A.* No, sir.

"*Q.* They never told you that?

"*A.* No, sir.    This deal was off a couple of days after I received an offer from Mr. Weingarten.    *    *    * I read that letter (of September 18th).    I knew by that letter that Elbom and Schwartzberg were ready to go through with the transaction."

The register card showed that letter was receipted for September 19th.

On September 24, 1919, plaintiffs filed a bill of complaint which, with amendments permitted by the court, asked for an injunction, reformation of the contract to clearly include right of possession on payment of $5,800, specific performance and for an accounting as to rents.    Defendants answered issuably in traverse and denial.    The suit was heard on testimony taken in open court, resulting in a decree granting the relief asked for by plaintiffs.

A careful reading of this record with reference to the issues of fact raised by the conflicting testimony impels to the unavoidable conclusion that as between plaintiffs and Barnett and Pavsner somebody prevaricated.    We find no occasion to disturb the conclusions of the trial judge who saw and heard the witnesses that it was not plaintiffs or Barnett.    Their testimony shows with convincing details that an extension of time with appointment of time and place to close the deal was twice agreed upon, which plaintiffs met and defendants defaulted in, after the claimed notice of forfeiture, which it may be incidentally noted was directed against the invalid, antedated Sunday "agreement of purchase dated July 26, 1919," upon which plaintiffs do not rely.

As to this counsel states the elementary principle that a contract is made when the minds of the negotiating parties meet as to its terms, points out it is undisputed that the minds of these parties met and they came to a full agreement as to the terms of a land contract on Sunday, July 27, 1919, that a Sunday

contract is void under the statutes of this State, and a void contract cannot be ratified.    The purpose in signing a copy of the void Sunday agreement later was not a distinct or new contract but simply to ratify a void one; citing various authorities and quoting as follows from *Silver* v. *Shulman,* 213 Mich. 211:

"It was therefore void, could not be ratified, and cannot be enforced.    *Aspell* v. *Hosbein,* 96 Mich. 117; *Acme Electrical, etc., Co.* v. *VanDerbeck,* 127 Mich. 341 (89 Am. St. Rep. 476) ; *Berston* v. *Gilbert,* 180 Mich. 638."

The *Silver Case* involved specific performance of a written agreement for sale of real estate which defendant claimed was void because in fact executed on Sunday, April 6, 1919, although dated April 5, 1919. No questions of ratification or any subsequent proceedings were involved.    The only question at issue was whether or not it was in fact executed on Sunday. The court found that the testimony predominated in favor of that contention.    There is no suggestion in that case, or in those cited, that had the parties to the void contract discussed the subject on some later secular day and agreed to execute another written agreement embodying the terms of the void one, then gone before a scrivener, had it drawn up and understandingly signed it, such agreement would be void simply because its terms were once embodied in a void contract—and void only because executed on Sunday.    As pointed out in *Aspell* v. *Hosbein, supra,* the distinction between ratification and a new contract is that the latter must be complete in itself and "supply the necessary elements of a contract, without depending upon the Sunday transaction for any essential." Wherever they touch upon that subject the various cases relative to ratification cited by defendants' counsel recognize that test.

In numerous jurisdictions it is held that void contracts can be ratified.    Such is not the rule in this

State.    In 37 Cyc. p. 566, it is said, with citation of many decisions:

"But even in those jurisdictions where a Sunday contract is considered incapable of ratification, it is held that there is nothing to prevent the parties from making the contract over again on a week day, and that the consideration emanating from the tainted contract is sufficient to form the foundation for a new express promise on which recovery may be had."

"Contracts dated, executed and delivered on a week day cannot be defeated because the terms were talked over, or even agreed to upon Sunday." *Wooliver* v. *Insurance Co.,* 104 Mich. 132.

These parties met on Monday after making the void agreement, talked the matter over and came to an agreement which they had put in writing and signed on the following day.    Just how fully they then talked the terms over does not appear, but that they did discuss them is shown by the testimony of Barnett, who stated he was present on Sunday when the void agreement was signed, and—

"was also present at the talk that took place on Monday, before Mr. Small who drew up the agreement. Mr. Elbom and Mr. Schwartzberg were to collect the rents after the deal was closed and the contract made. It was agreed that Mr. Siegel and Mr. Pavsner were to retain their flats for six months and pay just such rent as the other tenants."

Though crudely drafted the instrument which they then signed consisted of mutual promises to buy and sell without depending on the Sunday transaction for any essential element.    The mutual promises were mutual considerations and $200 was acknowledged by defendants as paid to apply on the purchase price.

Defendants' contention that the contract is invalid because rate of interest, form of conveyance, security and vendors' equity are not stipulated, and the real party in interest as plaintiff is some party by the name

of Kahn, is not tenable.    It definitely describes the property, gives names of contracting parties and states the price with terms of payment, which satisfies the statute of frauds and establishes its validity.    *Brin* v. *Michalski,* 188 Mich. 400; *Ogooshevitz* v. *Arnold,* 197 Mich. 203; *Walsh* v. *Oakman,* 199 Mich. 688, and cases there cited; *Baller* v. *Spivack,* 213 Mich. 436. That plaintiffs had made a qualified agreement to sell the property long after this suit was commenced conditioned on their prevailing in this litigation is immaterial.

The court's decree as to possession was not erroneous because based on oral testimony.    The testimony was not only admissible to aid interpretation of the lame language of the contract touching rents and occupation by defendants of two apartments for a time, from which it was possible to infer a right of possession in plaintiffs, but the doctrine is well settled that in equitable proceedings where fraud or mistake in a contract are such as to admit the equitable remedy of reformation, parol evidence is admissible under a bill for specific performance.    2 Pomeroy's Equity Jurisprudence, §§ 862-866.

As to defendants' claim of forfeiture, assuming it covered the contract relied on here instead of the concededly void contract to which it refers, no language in the written agreement expressly makes time of the essence of the contract.    The bare naming of time for performance or when payments are to be made does not necessarily make time of the essence of the contract in a court of chancery.    *Waller* v. *Lieberman,* 214 Mich. 428; 2 Story's Equity Jurisprudence (14th Ed.), § 1064.    Strict forfeitures without previous notice and last chance to perform are not favored in equity; but when parties have by direct language in their contract made time of the essence thereof, courts of equity will hold the defaulting party to his express agreement and enforce the stipulated forfeiture.

Under the circumstances shown here, where plaintiffs have offered within reasonable time to perform on their part and were refused, equity will not enforce a forfeiture against them.

The decree will stand affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.