CATSMAN v. MACK INTERNATIONAL MOTOR TRUCK CORP.

1. CONTRACTS—SUNDAY CONTRACTS.
    Relief may be granted to parties under a contract made on a
    secular day if recourse to a Sunday contract is unnecessary
    although contract made on secular day may embody the same
    terms as the Sunday contract and provide for allowance of
    mutual credits actually exchanged thereunder.

2. SAME—CHATTEL MORTGAGES.
    Execution and acceptance of chattel mortgage on secular day
    operated to pass title to purchaser of motor trucks and fix pur-
    chase price owing and terms of payment regardless of contract
    of sale made on Sunday.

3. SALES—BREACH OF IMPLIED WARRANTY—WAIVER—CONSIDERATION.
    Right to damages for breach of implied warranty that trucks
    were reasonably fit for purpose for which purchased was waived
    by release in consideration of extension of time of payment
    which was signed after defects were known to buyer and had
    been complained of (2 Comp. Laws 1929, § 9454).

Appeal from Genesee; Parker (James S.), J.
Submitted January 11, 1934. (Docket No. 76, Cal-
endar No. 37,484.) Decided April 3, 1934.

Bill by Philip Catsman, doing business as Cats-
man Coal Company, against Mack International
Motor Truck Corporation, a New York corporation,
and another to restrain foreclosure of a chattel
mortgage, for an accounting and for other relief.
Cross-bill by defendant Mack International Motor
Truck Corporation against plaintiff for foreclosure
of chattel mortgage. From decree for plaintiff as
to defendant Mack International Motor Truck Cor-
poration, it appeals. Reversed and decree ordered
entered for appellant.

*Guy W. Selby,* for plaintiff.

*Stevenson, Butzel, Eaman & Long (Leo W. Kuhn,* of counsel), for defendants.

FEAD, J.   In 1929 plaintiff was in the gravel business at Flint.   He owned a pit 18 miles away, had $200,000 invested and large contracts to fill.   He wanted to buy a number of trucks, each of which would carry five yards (7½ tons) of gravel and pull two trailers, each loaded with six yards (9 tons). Competition was keen and defendant truck company's wholesale manager, Perry E. Warden, worked on the sale from January to June.   His superiors were kept fully advised of the negotiations at all times.

Warden and other salesmen were told the purpose of the trucks, the work required of them, and that plaintiff relied on the seller to furnish the proper vehicles.   On being advised of the requirements, some of the salesmen withdrew.   Others, including Warden, participated in a demonstration.   By representations, promises and written proposal Warden induced plaintiff to purchase 10 Mack trucks.

June 21st, plaintiff signed an order, which contained the agreed specifications, and gave Warden a down-payment check of $2,000.   Warden took the order to the Detroit office, where it was rejected. Warden sought plaintiff again, found him at his summer cottage on Sunday, June 23d, told him the order had been rejected because the provisions for payment were not satisfactory and, in handwriting, filled in a new form of order, dating it June 21st, modifying the terms of payments slightly and providing for three and a half to five-ton trucks, without mention of load capacity or ability to haul trailers.   Plaintiff did not read the order and did not know the specifications had been changed in it.

Warden left a copy of the order with him but no officially accepted copy was ever furnished plaintiff. It was accepted by defendant July 15th. After credit for the check and a secondhand truck, the balance of the purchase price was $50,000, to be payable in instalments. The trucks were delivered to plaintiff from July 6th to 17th. On July 15th he executed to defendant a chattel mortgage which recited that plaintiff "has purchased this July 15, 1929," the trucks from defendant.

The record leaves no doubt that defendant was guilty of deliberate deceit of plaintiff. Knowing his needs, it secured his signature to the order by misrepresentations and furnished vehicles which it knew were not in accordance with his desires and understanding.

On July 24th and October 22, 1929, and January 20, 1930, plaintiff made written complaints to defendant that the trucks had only four-yard bodies, they were not all of the same model, they were not giving proper service, he had trouble with them, and that the cost of upkeep was too great. Defendant increased the body capacity by sideboards but, on February 18th, it rejected plaintiff's other complaints upon the ground that the difficulties were not due to defective materials. Plaintiff claims he afterwards complained of defects in the trucks but not in writing.

Plaintiff made payments on the purchase price but not as required by the contract or chattel mortgage. In December, 1929, he asked that the notes be renewed because the gravel pit was closed. In April and June, 1930, he asked for extension of time to pay because of bad business conditions. In August defendant demanded possession of the trucks if the notes were not paid. At various other times

extension of time for payment was requested by plaintiff and granted by defendant, no complaints being made of the trucks upon such occasions.

On January 22, 1930, August 20, 1930, and November 22, 1930, plaintiff executed to defendant new chattel mortgages covering the balances then owing. Those mortgages followed the form of the first, that plaintiff "has purchased this (date of mortgage)." The procedure on taking new mortgages was rather unusual. In connection with each, plaintiff executed an instrument waiving advertisement and sale of the trucks, assigning all title to them, cancelling the prior chattel mortgage and releasing plaintiff from the indebtedness thereunder. Evidently the theory was that each renewal should constitute a foreclosure and sale to defendant, cancellation of the prior chattel mortgage, new sale to plaintiff, and a new chattel mortgage. The scheme was uniformly maintained in the instruments.

Each of the instruments, in addition to releasing defendant from various other rights and causes of action, provided:

"I do hereby for myself and my heirs, executors, administrators, and assigns, remise, release and forever discharge the said Mack-International Motor Truck Corporation, its successors and assigns, from any and every right and cause of action, claim or demand of whatsoever kind or description at law or in equity, or created by statute, which I now have or which I or my heirs, executors, or administrators can hereafter have against said Mack-International Motor Truck Corporation."

In September, 1931, defendant took possession of the trucks under the chattel mortgage of November, 1930, and proceeded to foreclosure for the amount of $15,425.44. The bill was filed to restrain foreclosure sale and for an accounting.

Plaintiff claimed damages for breach of an implied warranty that the trucks should be reasonably fit for the purpose for which they were purchased. He also, by amendment to his pleadings, charged that the contract of sale was void because executed on Sunday. Defendant filed cross-bill for foreclosure. Plaintiff had decree requiring return of the trucks to him, cancelling all outstanding notes and chattel mortgages, and awarding damages of $8,269, for breach of warranty and fraud.

The record is very voluminous but the findings of facts by the chancellor, outlined above, were so amply supported by the preponderance of the testimony that details are unnecessary. The issue is one of law.

Plaintiff contends the contract of sale was void because made on Sunday and he is entitled to recover all payments made on the purchase price. The order did not purport to pass title to any trucks to plaintiff. It is argued that it was merely an offer to buy, not a contract, and, as it was accepted by defendant on a secular day, it was not a Sunday contract. The question of relief in this court as now prayed by plaintiff in this connection offers some complications, because plaintiff has not appealed. However, we will pass these questions and proceed to another phase of the matter.

While a Sunday contract is void and cannot be ratified, it does not prevent the parties from making a new contract on a secular day, embodying the same or other terms and providing for allowance of mutual credits actually exchanged under the Sunday contract. The test is whether the relief sought may be granted without recourse to the agreement made on Sunday. See, *Rott* v. *Goldman,* 236 Mich. 261; *Elbon* v. *Pavsner,* 225 Mich. 213; *Acme Electrical*

*Illustrating & Advertising Co.* v. *Van Derbeck,* 127
Mich. 341 (89 Am. St. Rep. 476); *Pillen* v. *Erickson,*
125 Mich. 68; *Aspell* v. *Hosbein,* 98 Mich. 117;
*Brazee* v. *Bryant,* 50 Mich. 136.

When the chattel mortgage was given on July
15th, a secular day, the trucks belonged to defend-
ant.    The execution and acceptance of the chattel
mortgage operated to convey title to plaintiff, to
fix the purchase price owing, and the terms and con-
ditions of payment.    By agreement therein the title
passed July 15th.    A completed sale and security
were established by the mortgage.    If the Sunday
transaction were wholly forgotten, relief of fore-
closure may be granted upon the basis of the mort-
gage and its successors.    If the subsequent mort-
gages amounted to new sales, the secular character
of the contract of sale is emphasized.

Plaintiff further contends he is entitled to recover
damages for breach of an implied warranty that the
trucks were reasonably fit for the purpose for which
they were purchased and the court so held.    2 Comp.
Laws 1929, § 9454, uniform sales act.    The conten-
tion would be sound (*Lutz* v. *Hills-Diesel Engine
Co.,* 255 Mich. 98) were it not for the matter of
waiver and release.

The releases accompanying the mortgages of Jan-
uary, August and November, 1930, were supported
by the consideration of extension of time for pay-
ment.    Plaintiff claims they were procured by fraud
and also in ignorance by plaintiff of the facts be-
cause he had not read the handwritten copy of the
order before the trial and, therefore, did not know
its contents and that it was different from the agree-
ment he had made.    The only effect of plaintiff's
ignorance in that respect, if justifiable in view of
his possession of a copy of the order for so long a

time, could be that the question of release be tested upon the basis that the order read as plaintiff understood it.

The testimony is undisputed and written that plaintiff knew, and made complaint, of the same defects in the trucks as he now claims, after he had used them for some months and before the first release was executed. He had used them two seasons when he signed the last release. There was no testimony that he was induced to execute the releases by misrepresentations or assurance by defendant nor that he did not know what he was doing. We discover no defense to them.

Decree reversed and one may be entered for defendant for foreclosure, with costs.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ.. concurred.