AL-OIL, INC., v. PRANGER.

1. SPECIFIC PERFORMANCE—TIME—TERMINATION OF CONTRACT TO PURCHASE LAND.

Evidence presented in purchaser's suit for specific performance of contract to purchase land, brought after expiration of over 2 months following close of 60-day period plaintiff had inserted to get provisions as to zoning so changed as to permit use of premises for a gasoline service station *held*, to show that defendant owners had taken no action to declare the contract terminated or to fix a definite time for the consummation thereof after 60-day period had lapsed.

2. VENDOR AND PURCHASER—LAND CONTRACTS—TIME OF PERFORMANCE.

The bare naming of time for performance or when payments are to be made does not necessarily make time of the essence of a land contract in a court of chancery, as strict forfeitures without previous notice and last chance to perform are not favored in equity.

REFERENCES FOR POINTS IN HEADNOTES
[1] 55 Am Jur, Vendor and Purchaser §§ 109–120.
[2] 55 Am Jur, Vendor and Purchaser §§ 111–114.
[3, 5, 6] 55 Am Jur, Vendor and Purchaser §§ 117–120.
[4] 55 Am Jur, Vendor and Purchaser §§ 115, 116.
[7] 49 Am Jur, Specific Performance § 60.
[8] 49 Am Jur, Specific Performance §§ 34–39.

3. SAME—TIME OF PERFORMANCE—WAIVER.

The party to a land contract in whose favor the waiver of performance within a specified time operates is thereafter bound only to perform within a reasonable time, except in a case where there has been a specific extension of time.

4. CONTRACTS—TIME OF PERFORMANCE.

The expiration of the time fixed by a contract for its performance, with the concurrence of both parties, renders the time of performance indefinite and one party cannot rescind until full notice and a reasonable time for performance is given.

5. SAME—TIME OF PERFORMANCE—WAIVER—EVIDENCE.

Waiver of the time of performance of a contract may be evidenced by conduct.

6. VENDOR AND PURCHASER—TIME OF PERFORMANCE OF LAND CONTRACT—WAIVER—EVIDENCE.

Defendant vendors under a land contract, stipulating it was to be performed within 60 days, a conditional provision which had been inserted by plaintiff purchasers in order to provide time within which to obtain a permit to erect and operate a gasoline service station, who had by their attitude evinced an intention to consider the contract in force after the lapse of the 60-day period, were precluded from asserting, after the permit was secured, the termination of the contract because of nonperformance within the period stated in the condition set forth in the offer to purchase.

7. SPECIFIC PERFORMANCE—LAND CONTRACT—EQUITY—VALUE.

It was not inequitable to decree specific performance against vendors of real estate who had accepted offer to sell at what they then considered a fair value with full knowledge that purchaser would need some time within which to obtain a permit to erect a gasoline service station thereon, merely because after the permit had been obtained they were led to believe they might realize a better price for the property.

8. SAME—LAND CONTRACT—REMOVAL OF CONDITION—MUTUALITY OF OBLIGATION AND REMEDY.

A contract to purchase land, conditioned in its inception upon plaintiff's procurement of permit to erect a gasoline service station thereon, ceased to be conditional when permit was obtained, hence, defendant vendors were not entitled to claim lack of mutuality of obligation and remedy in purchaser's suit for specific performance.

Appeal from Macomb; Carroll (Howard R.), J. Submitted October 6, 1961. (Docket No. 33, Calendar No. 48,976.) Decided December 1, 1961.

Bill by Al-Oil, Inc., a Delaware corporation, against Herbert Pranger and Bertha M. Pranger for specific performance of contract to sell real property. Decree for plaintiff. Defendants appeal. Affirmed.

*Moll, Desenberg, Purdy, Glover & Bayer,* for plaintiff.

*Stanton, Sempliner, Dewey & Knight* (*Robert B. Knight,* of counsel), for defendants.

CARR, J. In November, 1958, the defendants were the owners of a parcel of land, approximately an acre in extent, located on Groesbeck highway in the city of Warren, Macomb county. Desiring to sell the property, they listed it with a real-estate broker who procured a written offer for its purchase by plaintiff for the sum of $35,000. A deposit in the sum of $1,000 was made with said broker, and the offer to purchase specified that the balance should be paid in cash or by certified check at the time of closing of the transaction. It was further provided that the broker might at his option deliver the said deposit to the seller upon acceptance of the offer.

Among other provisions in plaintiff's offer to purchase was the following:

"It is understood and agreed that this offer is subject to the following conditions: (1) The purchaser obtaining the property zoned for gas station and obtaining all the necessary permits, rights, approvals from the city of Warren, county, State and all other governmental agencies regarding the zoning and operating a gas station within 60 days of the date herein. (2) Seller having the right after closing

within 60 days to remove the home, and other build-
ings on the property at no legal expense to pur-
chaser, providing the seller fills in where necessary."

Said offer was duly submitted to defendants who
made their acceptance in writing dated November
22, 1958.   Plaintiff acknowledged receipt of the ac-
ceptance 2 days later.   The condition above quoted
was inserted by plaintiff, for its own protection, in
its offer to purchase, it being intended that the prop-
erty should be used as the site of a gasoline service
station.

Apparently plaintiff experienced some delay on
the part of officials of the city of Warren in the
granting of a permit for the establishing and operat-
ing of a service station of the character desired.
The matter was under discussion and consideration
for some weeks, the result being that the desired
permit was granted on March 30, 1959.   During the
period that plaintiff was attempting to obtain the
requisite permit defendants were kept informed as
to the progress of negotiations with the city, and
meetings were had between the parties from time to
time.   It does not appear that prior to the granting
of the permit either plaintiff or defendants took ac-
tion to declare the agreement evidenced by the offer
and acceptance as terminated because of the delay
that had occurred.   Following the granting of the
permit defendants refused to convey the property to
plaintiff, and in consequence thereof the present suit
for specific performance was instituted.

It was the claim of defendants in the trial court
that the condition above quoted as set forth in the
offer to purchase required that the contemplated
transaction be completed on or before the expiration
of the 60 days following acceptance of the offer, that
there was no agreement for an extension of time, and
that, in consequence, the contract as made should be

regarded as terminated due to expiration of time for performance. Defendants also insisted that the relief sought should be denied on the theory that under the agreement as made by the parties there was a lack of mutuality of remedy and obligation, and that it would be inequitable under the circumstances for the court to decree specific performance.

After listening to the proofs offered by the respective parties to the suit the trial judge concluded that plaintiff was entitled to the relief sought, and that if the contract as written were interpreted as contemplating consummation of the transaction within a period of 60 days from and after November 22, 1958, strict compliance with such condition was waived. No claim is made on behalf of defendants that following the expiration of said period they notified plaintiff that they considered the contract as having been terminated, or that they would insist on performance thereof within a specified reasonable time thereafter. On the contrary, it is apparent from the testimony of defendant Herbert Pranger that discussions were had by and between the parties, with reference to the carrying out of the agreement, on several occasions following the expiration of the 60-day period in question. The witness claimed that plaintiff sought to obtain a modification of the purchase price because of possible litigation that might be necessary to obtain the desired permit, and that the suggestion claimed by him to have been made was not accepted, although Mr. Pranger indicated that he gave consideration to the matter.

It appears that Mr. Pranger discussed the situation at various times with Albert Olivetto, the broker with whom the property had been listed for sale, and with A. H. Mallory, the president of plaintiff corporation. In his version as to what occurred at these conferences Mr. Pranger stated in substance that he was willing "to go along" after the lapse of the

60-day period but that he resented what he considered to be an attempt to obtain a modification of the agreed purchase price. With reference thereto he testified:

"*A.* Yes, and I told them I wouldn't do anything—I wanted to go 2 or 3 days over it—and in them 2 or 3 days, I talked to a lot of guys and I figured things looks better and I found out you can get more money for the things—and I told them the thing looks good and I just didn't want it and they come in later. * * *

"*A.* Well, you see, when we closed that first meeting I told him I wanted 3 or 4 days or a week to think it over and talk to my wife, and she told me to inquire some more and we set a date—I think they called for the next meeting.

"*Q.* Do you remember what time of day this meeting was?

"*A.* I think pretty close to noon that day.

"*Q.* All of these meetings were at your house and office?

"*A.* Ya, downstairs with Al and upstairs with Olivetto.

"*Q.* What was said at this meeting with reference to the sale of the property to the Al-Oil Company?

"*A.* Well, at that meeting they was going to pay off the stuff. * * *

"*A.* Olivetto and Al-Oil was going to absorb these costs.

"*Q.* They were going to absorb the $5,000 cost?

"*A.* Because I didn't figure I had anything to do with it. All they were trying to do to tell for me to get this sale if I would give a little they could spend some money to get this zoning changed, otherwise they wasn't interested—that was the terms they gave me.

"*Q.* Any suggestion that you put up $2,000 in escrow account at this second meeting that you were called?

"*A.* Ya, it was suggested but I never agreed on anything like that.

"*Q.* Who suggested it?
"*A.* I think it was Mr. Olivetto.
"*Q.* Who did most of the talking?
"*A.* Mr. Olivetto."

Without discussing the testimony in further detail it should be said, on behalf of plaintiff, that defendant Pranger's version of the alleged conversations was disputed. Apparently the broker was endeavoring to arrange for the completion of the agreed transaction. The conclusion cannot be avoided on the basis of the record before us that defendants took no action to declare the contract terminated or to fix a definite time for the consummation thereof.

When the permit was finally secured on March 30th the condition specified in the offer to purchase was met and plaintiff was obligated to make the agreed payment for the property. That plaintiff wished to close the deal is not in dispute, nor is it questioned that failure to do so resulted from the refusal of defendants to execute the required conveyance. The record suggests that the reason for such refusal was based on the conclusion of defendants that they could sell the land for more money than plaintiff had offered if they could avoid carrying out their agreement. The delay in obtaining the permit was perhaps irritating to defendants, but apparently they realized that plaintiff was attempting in good faith to obtain the desired action on the part of the officials of the city and that the delay that occurred was not due to any lack of effort, or other fault, on plaintiff's part.

The contract as drawn did not specifically provide that time of performance should be regarded as of the essence of the agreement. Presumably plaintiff considered in making its offer that 60 days would be sufficient to obtain the desired permit and, as before noted, the condition was inserted in the offer for its

protection.   As stated in *Elbom* v. *Pavsner,* 225 Mich 213, 223 :

"The bare naming of time for performance or when payments are to be made does not necessarily make time of the essence of the contract in a court of chancery.   *Waller* v. *Lieberman,* 214 Mich 428; 2 Story's Equity Jurisprudence (14th ed), § 1064. Strict forfeitures without previous notice and last chance to perform are not favored in equity."

Had the parties in the instant case, or either of them, desired that performance within the period of 60 days from and after November 22, 1958, should be required express provision to such effect might have been incorporated either in the offer or in the acceptance thereof.   This was not done and under the proofs in the case it is apparent, as found by the trial judge, that there was a waiver, by the conduct of both parties, of performance within any fixed time.   The general rule in this regard is suggested by the following quotation from 17 CJS, Contracts, § 506, pp 1080, 1081 :

"Where a stipulation for performance at a particular time has been waived, the party in whose favor the waiver operates is thereafter bound only to perform within a reasonable time, except in a case where there has been a specific extension of time, in which case it is held that the new time fixed becomes of the essence, as was the case in the original contract.   So, where the time fixed by the contract for performance is permitted to pass, both parties concurring, the time of performance thereafter becomes indefinite, and one party cannot rescind until full notice and a reasonable time for performance is given."

That a waiver of the character here involved may be evidenced by conduct has been repeatedly recognized in judicial decisions.   As applied to the facts

in the instant case the conclusion may scarcely be avoided that defendants clearly evinced an intention on their part to consider, after the lapse of the 60-day period, the contract as still in force and effect. By their attitude, with full knowledge of the continued attempt on the part of plaintiff to obtain the requisite permit for the construction and operation of the service station, they indicated their acquiescence in such efforts and, in consequence, were in no position after the permit was secured to assert as a defense to the suit against them that the contract should be regarded as terminated because of non-performance within the period stated in the condition set forth in the offer to purchase.

It is further claimed on behalf of defendants that specific performance would be inequitable if decreed in plaintiff's favor. The record does not support such contention. Defendants accepted the offer with full knowledge of the situation, and apparently at the time considered that they were receiving fair value for the property. No claim is made that they were in any respect deceived either by their own broker or by representatives of plaintiff corporation. The fact that they were led to believe subsequently that they might realize a better price for the property if afforded an opportunity to do so does not justify refusal to grant the relief sought under the bill of complaint.

It is further insisted that there must be mutuality of obligation and of remedy in order to justify relief of the nature here involved. Apparently defendants are contending that the condition set forth in the offer made by plaintiff precluded the enforcement by them of plaintiff's promise to pay the specified consideration. However, when the permit was secured as a result of plaintiff's efforts in that respect the agreement ceased to be in any way conditional, and defendants might have brought action to recover the

agreed purchase price of their property if plaintiff had refused to carry out its contract. The obvious situation was that plaintiff insisted on performance and was prepared to fulfill its obligation at the time the suit was instituted.

Counsel for appellants called attention on the oral argument of this case to *Matthews* v. *Plymouth Community Hotel Co.,* 265 Mich 309. There the lessee of certain premises used for the purpose of conducting a restaurant business sought specific performance of a renewal provision of the lease. Plaintiff had given the required notice of his option to renew, in response to which defendant served notice that the lease would be terminated because of alleged failure to properly conduct the business. The agreement provided that plaintiff should pay to defendant, presumably by way of rental, a certain percentage of gross receipts for each month. The trial court dismissed the bill and this Court affirmed on the ground that had plaintiff abandoned the premises specific performance against him could not have been enforced. Obviously the fact that the lease contemplated the carrying on of a business by plaintiff, and the payment of rental in the manner indicated, established the legal defense of lack of mutuality. The situation was not one involving, as in the case at bar, an agreement for the sale and purchase of real estate and the payment therefor by cash or certified check.

The facts in *Worsham* v. *McCall,* 259 Mich 630, to which attention is also directed, were such as to differentiate it from the controversy now before us. It may be noted that specific performance was granted in that case insofar as such relief was found to be reasonable and equitable. It may be noted also that the Court recognized the generally accepted proposition that specific performance may not be arbitrarily refused, citing *Gregor* v. *Olde,* 218 Mich 187, 193.

We think that the trial court properly disposed of the case in accordance with the facts established by the proofs and with accepted legal principles applicable to a suit of this nature. The decree entered is affirmed, with costs to appellee.

DETHMERS, C. J., and KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.